UNITED STATES of America,
Plaintiff–Appellee,

v.

Roy Lee CLARK, Defendant–Appellant.

No. 91–5522.

United States Court of Appeals,
Sixth Circuit.

Submitted Nov. 15, 1991.

Decided Feb. 21, 1992.

James R. Dedrick, Asst. U.S. Atty. (briefed), Jerry G. Cunningham, U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

John T. Milburn Rogers (briefed), Jerry W. Laughlin (briefed), Rogers, Laughlin, Nunnally & Hood, Greeneville, Tenn., for defendant-appellant.

Before KENNEDY and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Roy Lee Clark appeals his conviction and sentence imposed for the theft of a vehicle belonging to the Federal Bureau of Investigation ("FBI"), and the unlawful conversion with intent to steal a second FBI vehicle, both in violation of 18 U.S.C. § 641 (1988). For the reasons that follow, we affirm Clark's conviction but remand for recalculation of the amount of restitution owed.

I

Clark operated a business in Knox County, Tennessee that bought and sold automobiles and automobile parts. In early 1990, the FBI began an investigation of Clark and requested the assistance of Michael Rector, a Tennessee law enforcement officer and brother-in-law of Clark. Rector, who was already involved in a separate investigation of Clark on state stolen vehicle charges, agreed to work undercover for the FBI.

In a series of conversations secretly audiotaped by Rector, Clark began asking Rector to locate vehicles for him to steal. On January 12, 1990, Clark asked Rector to watch for a Chevrolet Blazer worth stealing. On February 21, 1990, Clark again expressed his interest in obtaining a Blazer and added that he wished to steal a Cadillac Eldorado as well. Clark discussed his theft activities and, at his own suggestion, drove around with Rector looking for suitable vehicles to steal. During their journey, Rector observed Clark steal a 1987 Oldsmobile. At the end of the evening Clark again reminded Rector that he still sought a Blazer and a Cadillac. On February 23, 1990, and again on February 29, Clark reiterated his interest in stealing a Cadillac.

In light of Clark's repeated requests, the FBI purchased a Blazer and a Cadillac. On March 2, 1990, FBI agents parked the Blazer in the parking lot of a Red Roof Inn and told Rector to notify Clark of its location. Rector did so in a recorded conversation that same day.

That evening, FBI agent Don Provonsha observed and videotaped Clark arrive alone at the Red Roof Inn and park next to the Blazer. The FBI later discovered that the car in which Clark arrived was also stolen. Clark forced open the door of the Blazer, then returned to the car in which he had arrived and drove away. Moments later, Clark returned on foot, entered the Blazer, and seconds later drove off with the vehicle. State police later found the Blazer parked in a nearby Holiday Inn parking lot. In a conversation secretly taped by Rector on March 5, 1990, Clark admitted having stolen the Blazer, but stated that he had abandoned it after becoming frightened.

On March 23, 1990, Rector recorded a conversation in which Clark again expressed his interest in stealing a Cadillac and asked Rector to notify him if he saw one. That evening, Rector told Clark that he had seen a Cadillac parked at a nearby motel. Unbeknownst to Clark, the vehicle belonged to the FBI. While en route to the Cadillac, Clark stole a gray Cadillac parked at another motel, which he stated was necessary so as not to have to use his own vehicle to steal the FBI Cadillac. Witnesses later testified that they had seen Clark earlier that evening attempt to steal a 1987 Camaro and a 1988 Corvette. After retrieving the gray Cadillac, Rector and Clark drove to the motel where the FBI Cadillac was parked. Clark forced open the FBI Cadillac but could not start it. Clark then suggested that he and Rector proceed to a nearby restaurant. There Clark entered a 1986 Cadillac that Clark

had stolen earlier at a nearby movie theater. On March 26, 1989, Rector recorded a conversation in which Clark asked that Rector continue looking for a Blazer and a Cadillac. After each of the above recordings were made, they were turned over to the FBI, which retained custody of them until the time of trial. Officers arrested Clark soon after the March 26 conversation.

On July 12, 1990, Clark filed a pre-trial motion to suppress evidence of the conversations secretly recorded by Rector. Because Rector was murdered on May 31, 1990, Clark argued that introduction of the recordings would abridge his constitutional right to confront witnesses against him. The court denied the motion. The case proceeded to trial on November 19, 1990.

At trial, Clark raised the defense of entrapment and asked that the government turn over all tapes in its possession concerning Clark and any activities for which Clark had been investigated. Alternately, Clark asked that the court make an in camera inspection of the tapes. The government objected and certified to the court that it had disclosed all tapes relevant to the two counts with which Clark was charged, and that the remaining recorded material was relevant to other cases involving Clark that were currently under investigation, including the murder of Rector. The court denied Clark's request.

On November 21, the jury returned a verdict of guilty on both counts. The court subsequently sentenced Clark to twenty-four months imprisonment on each count, to be served concurrently, with a three-year term of supervised release. The court further imposed a fine of $30,000 and ordered Clark to pay restitution of $117,220.97. Clark then filed the present appeal.

## II

Clark's primary contention on appeal is that the evidence offered at trial was insufficient to support his conviction. Specifically, Clark maintains that, given his asserted defense of entrapment, the government failed to prove beyond a reasonable doubt that he was predisposed to commit the acts that form the basis of his conviction. We review challenges to the sufficiency of the evidence to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). In determining whether the evidence was insufficient as a matter of law to establish predisposition, "we must view that evidence in the light most favorable to the prosecution and resolve all reasonable inferences therefrom in its favor." *United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir.1984).

The defense of entrapment contains two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). The predisposition inquiry "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Id.* This court has recently reaffirmed that, once an issue, a defendant's predisposition must be proven beyond a reasonable doubt, and has defined predisposition as " 'the defendant's state of mind before his initial exposure to government agents.' " *United States v. Barger*, 931 F.2d 359, 366 (6th Cir.1991) (quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir.1983)); *see also United States v. Lasuita*, 752 F.2d 249, 253 (6th Cir.1985). Evidence that government agents merely afforded an opportunity or facilities for the commission of the crime is insufficient to establish lack of predisposition. *See Mathews*, 485 U.S. at 66, 108 S.Ct. at 888.

The question of entrapment is generally one of fact and, accordingly, left to the sound discretion of the jury. *Id.* at 63, 108 S.Ct. at 886–87. Where the defendant claims entrapment as a matter of law, " 'the testimony and facts must be undisputed.... Furthermore, the undisputed

evidence must demonstrate a 'patently clear' absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.' " *Barger,* 931 F.2d at 366 (quoting *United States v. Pennell,* 737 F.2d 521, 534 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985)).

While tacitly conceding his predisposition to steal the vehicles involved in the instant conviction, Clark argues that the prosecution offered insufficient evidence of his predisposition to steal vehicles generally when initially approached by agent Rector some eighteen months before the crimes at issue here were committed. Clark relies exclusively on the cross-examination testimony of FBI agent Callahan, whose testimony brought out that Clark had no prior criminal record and that Callahan had no knowledge of Clark's initial involvement in the overall criminal enterprise.

Upon review of the record, we do not believe there exists sufficient undisputed evidence to demonstrate a "patently clear" absence of predisposition. *See Barger,* 931 F.2d at 366. In denying Clark's motion for a directed verdict, the district court stated as follows:

> There is evidence here in my opinion of [Clark's] predisposition to commit the type of crime that he committed out of which these charges arose. The man during the course of these conversations admitted that he had on previous occasions stolen cars even before the investigation began, and certainly he was involved in stealing cars, other cars prior to the time that he stole the car, the Blazer in question, and attempted to steal the Cadillac. It's a pretty clear case to me. It's a case for the jury, of course, but I don't have any problem with sending it to the jury.

J.A. at 185. We believe that the court properly submitted the issue of Clark's predisposition to the jury and further find no error in the jury's rejection of Clark's entrapment defense.

### III

■ Clark next claims that the district court erred in not requiring disclosure of all written or recorded statements made by Clark in the government's possession. At trial, the government certified to the court that all relevant evidence had been disclosed and argues on appeal that it should not be compelled to disclose evidence related to ongoing investigations of Clark, including stealing and dismantling vehicles, interstate trafficking in vehicle titles, and the murder of agent Rector.

Federal Rule of Criminal Procedure 16(a)(1)(A) (1990) provides, in pertinent part, that "[u]pon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government...." We review a district court's ruling under Rule 16 for abuse of discretion. *United States v. Phillip,* 948 F.2d 241, 250 (6th Cir.1991). Furthermore, such rulings are subject to harmless error analysis. *Id.* at 251.

The government has the obligation to turn over evidence in its possession that is favorable to the accused and material to his guilt or punishment. *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). In considering the breadth of the rule announced in *Brady,* this court has held that

> while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril. But significantly, if the government does fail to

disclose *Brady* material, the defendant has a constitutional remedy for the non-disclosure *only* if the defendant can show that there is a reasonable probability that "the omission deprived the defendant of a fair trial."

*United States v. Presser*, 844 F.2d 1275, 1281–82 (6th Cir.1988) (quoting *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)) (citations omitted).

In the instant case, the government certified to the district court that all material relevant to the two counts charged had been disclosed. Thus, we are confident that the government will suffer the consequences should it later come to light that material relevant to Clark's defense was withheld. Furthermore, we note that Clark has alleged in nothing but the most vague and conclusory terms that the undisclosed tape recordings might have supported his defense and has failed to suggest with any degree of particularity how non-disclosure prejudiced his trial. Accordingly, we find no error in the district court's refusal to compel disclosure of the remaining statements by Clark in the government's possession.

## IV

■ Clark next contests the evidentiary basis underlying the district court's decision to increase his sentence under United States Sentencing Commission, *Guidelines Manual*, § 2B1.1(b)(5) (Nov. 1991). That section provides that, where the defendant is guilty of a crime involving theft, "[i]f the offense involved more than minimal planning, increase by 2 levels." *Id.* We review a district court's factual determinations made for the purposes of sentencing under the clearly erroneous standard. *United States v. Herrera*, 928 F.2d 769, 773 (6th Cir.1991).

We find the evidence presented in this case sufficient to support the enhancement. Clark repeatedly asked Rector to watch for a Blazer or Cadillac worth stealing. In addition, Clark's method of stealing the FBI Cadillac clearly indicated prior planning. Accordingly, we affirm the court's decision to increase Clark's sentence pursuant to § 2B1.1(5) of the guidelines.

## V

■ Clark next contends that the court erred in refusing to reduce his offense level by two levels for acceptance of responsibility under U.S.S.G. § 3E1.1. In *United States v. Snyder*, 913 F.2d 300, 305 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991), we held that an appellate court shall review a district court's decision under section 3E1.1 for clear error. We further held that,

> [b]ecause the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the "clearly erroneous" standard will nearly always sustain the judgment of the district court in this area.... For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

*Id.* (quoting *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989)).

Clark contends that he freely admitted to having committed the offenses charged and was therefore entitled to the two-level reduction as a matter of law. However, at a pretrial hearing, Clark stated to the court: "Take me out. I don't want to be in here and hear these damn lies. The FBI needs to be all hung.... Hope you all die and go to hell." J.A. at 78. While Clark maintains that his outburst merely expressed his frustration at being denied bond prior to trial, we believe the district court was in a much better position to evaluate the true meaning of his remarks. We find, therefore, no error in the district court's refusal to decrease Clark's sentence under § 3E1.1 of the guidelines.

## VI

■ As a final matter, Clark challenges the district court's order that he pay restitution for all of the vehicles allegedly stolen during the course of the investigation as well as for the full value of the two FBI vehicles later recovered by law enforce-

ment officers. The government counters that, because each of the vehicles listed by the court were stolen during the course of Clark's theft and conversion of the FBI vehicles, they were properly the subject of restitution.

This claim requires us to determine the proper scope of the Victim Witness and Protection Act of 1982 ("VWPA"), 18 U.S.C.A. §§ 3663–3664 (West Supp.1991). Section 3663(a)(2) provides: "For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." The government argues that the evidence, taken in its entirety, indicated that Clark was involved in a scheme, conspiracy, or pattern of stealing vehicles and, therefore, that the "victims" entitled to restitution include all those whose vehicles were stolen during the course of Clark's activities.

We believe that the statutory language, as well as recent case law, in fact support Clark's position. Section 3663(a)(2) by its terms extends only to those crimes where a scheme, conspiracy, or pattern of criminal activity *is an element of the offense.* As the Supreme Court recently clarified in *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." The Court added that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* 110 S.Ct. at 1984.

The indictment under which Clark was charged and convicted was limited to the FBI Blazer and Cadillac and was brought solely under 18 U.S.C. § 641. That section, however, does not include a scheme, conspiracy, or pattern of criminal conduct as an element of the offense.[1] Therefore, the FBI was the only "victim" entitled to restitution under the VWPA. That Clark may have been involved in a scheme or pattern of stealing vehicles is, we believe, irrelevant; Clark was neither charged with nor convicted of such scheme or pattern, but merely with simple theft.

The government would have us resolve this issue in their favor under this court's broader reading of the VWPA enunciated in *United States v. Durham*, 755 F.2d 511 (6th Cir.1985), and its progeny. Without deciding whether *Durham* would in fact compel a decision in the government's favor, we nevertheless conclude that the Court's decision in *Hughey* forecloses so broad an interpretation of *Durham.* Indeed, the Court in *Hughey* explicitly repudiated such a course, finding its narrow reading of the Act more consistent "than ... one that permits an open-ended inquiry into losses resulting from the 'defendant's related course of conduct' or from 'acts that had a significant connection to the act for which conviction was had.'" *Hughey*, 110 S.Ct. at 1984 n. 4 (citations omitted).

Clark also asserts that, because both the Blazer and the Cadillac were recovered by the FBI, the court improperly required him to make restitution for the full value of the Blazer and the Cadillac, rather than simply for the damages to the vehicles. While we agree that the FBI is only entitled to the value of damage to the two vehicles, we cannot say with certainty that the court required Clark to pay the full amount of the vehicles. Although the judgment against Clark appears to have required res-

---

1. 18 U.S.C. § 641 (1988) provides, in relevant part:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

titution of the full value of the vehicles, at Clark's sentencing hearing, the district court stated: "[t]he Court is going to ... require Mr. Clark to pay restitution to the victim [sic] of his crime up to \$117,220.97. I take it that \$117,220.97 includes the \$1,700 damage done to the government vehicle or vehicles." *Id.* at 189. Because of the apparent discrepancy between the judgment and the court's statements at sentencing, we shall remand this issue for the court to enter judgment for restitution against Clark only in the amount of any loss caused the government by reason of the theft or attempted theft of the two vehicles.

## VII

For the foregoing reasons, we REMAND for recalculation of restitution in an amount consistent with this opinion and AFFIRM all other aspects of Clark's conviction and sentence.