**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald Keith BAKER, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert MAJORS, Defendant–Appellant.**

Nos. 93–10350, 93–10351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1994.

Decided June 6, 1994.

T. Conrad Judd, Carlsbad, CA, for defendant-appellant Ronald Keith Baker.

Frank M. Mangan, San Jose, CA, for defendant-appellant Robert Majors.

Rory Little, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and BROWNING,* District Judge.

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

Ronald Keith Baker and Robert Majors each pleaded guilty to one count of being an accessory after the fact to the making of a false statement on a loan application they submitted to California First Bank. *See* 18 U.S.C. §§ 3, 1014. The district court sentenced Baker and Majors to three years of probation. Pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663, the district court ordered each of them to pay $20,000 in restitution to Union Bank, the successor to California First. Baker and Majors appeal only the restitution award. They claim that the district court erred in ordering that restitution be paid to Union, because Union was not a "victim" within the meaning of the Victim and Witness Protection Act. In addition, Majors argues that the

---

* Honorable William D. Browning, Chief United States District Judge for the District of Arizona, sitting by designation.

district court erred by failing to conduct a sufficient inquiry into his ability to pay, as well as by ordering restitution beyond the loss attributable to the specific offense of conviction. We vacate the restitution awards and remand for further proceedings.

## I.

On September 9, 1992, a grand jury returned an eight-count indictment against Baker, Majors, and three others. The indictment alleged that in 1985 the defendants had participated in a scheme to commit fraud against California First Bank by fraudulently obtaining several loans from the bank and subsequently defaulting on them. The indictment charged both Baker and Majors (and the three other codefendants) in Count One with participating in a scheme and artifice to commit bank fraud. *See* 18 U.S.C. §§ 2, 1344. Baker was also charged in Counts Two and Three with making false statements on a loan application. *See* 18 U.S.C. § 1014. Count Two alleged that as a result of these statements Baker had received a $20,000 payment from the bank on March 12, 1985. Count Three alleged that he had received $10,000 on March 26, 1985. Counts Four and Five charged Majors with making false statements on a loan application. The indictment alleged that Majors had received a $5,000 payment from the bank on April 18, 1985 (Count Four) and a $15,000 payment on May 8 (Count Five).

Baker and Majors entered into plea agreements on March 11, 1993. They each pleaded guilty to one count of being an accessory after the fact to the making of a false statement on a loan application. Baker agreed to plead guilty to Count Two (amended to charge the lesser offense). The government promised to recommend—in lieu of a prison sentence—probation, $20,000 in restitution, and a fine. Majors agreed to plead guilty to Count Five (also amended to charge the lesser offense). The government made the same promises to Majors as it had to Baker. The agreements were executed in open court, and the court then dismissed the other pending charges on the government's oral motion.

At sentencing, the government recommended that each defendant be ordered to pay $20,000 restitution. Because Union Bank of California had taken over California First Bank between the time of the bad loans and the time of sentencing, the government recommended that the restitution be paid to Union. Although both Baker and Majors objected that Union was not the "victim" of their conduct (in part because California First had written off the loans as uncollectible before the takeover), the district court ordered that Baker and Majors each pay $20,000 restitution to Union pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663. The district court also sentenced Baker and Majors to three years probation, but it did not impose any fine or prison term. Baker and Majors appeal only to the restitution order. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■ Both Baker and Majors challenge the district court's order that restitution be paid to Union Bank of California. Because California First Bank—the bank which suffered direct losses from the defendants' fraud—had written off the loans to Baker and Majors as uncollectible *before* Union Bank acquired it, Baker and Majors argue that Union suffered no loss as a result of their conduct. They claim that Union was not a "victim" for purposes of the VWPA, and that the district court therefore had no authority to order that restitution be paid to Union. Because the government did not carry its burden of establishing that Union was the "victim" of the defendants' conduct, we vacate the awards and remand for a determination of whether the loss from the bad loans to Baker and Majors (or the right to collect on these loans) passed from California First to Union in the takeover.[1]

---

1. "The legality of a restitution order is reviewed de novo. An order complying with the statutory framework, however, is reviewed for an abuse of discretion." *United States v. McHenry*, 974 F.2d 1031, 1033 (9th Cir.1992) (as amended) (citations omitted).

The VWPA authorizes a district court to order *only* "that the defendant make restitution *to any victim* of such offense." 18 U.S.C. § 3663(a)(1) (emphasis added). For the district court's restitution order to be valid, then, Union must have been a "victim" of Baker's and Majors's offenses.[2] The Act does not define the term "victim." However, we have held that any person or entity is a "victim" if it suffered injury—directly or indirectly—as a result of the conduct underlying the defendant's specific offense of conviction. *See United States v. Smith,* 944 F.2d 618, 621–22 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

In *Smith,* the defendant defrauded a savings and loan into making him several high risk loans totalling over $12,000,000. He eventually defaulted on these loans, and the savings and loan collapsed. The Federal Savings and Loan Insurance Corporation, which had insured the savings and loan's accounts, subsidized another financial institution's purchase of the savings and loan's assets and liabilities. In return, the FSLIC received the savings and loan's claims against the defendant and others. Following his bank fraud conviction, the district court ordered that the defendant pay restitution to the FSLIC, and we affirmed. *See id.* at 620–22. Although the FSLIC was not the party directly victimized by the defendant's actions, we concluded that it did suffer injury as a result of his conduct (presumably because of the subsidy it paid to the purchaser of the savings and loan). We held that the FSLIC "may receive restitution under the Act when, as in this case, it has acquired the claims of a defunct savings and loan." *Id.* at 622.

If in the process of the takeover Union acquired all of California First's claims, Union clearly qualified as a victim under *Smith.* However, it is the government's bur-

den to establish the loss sustained by a victim. *See United States v. Angelica,* 951 F.2d 1007, 1010 (9th Cir.1991). The government has not shown that Union sustained any loss from the bad loans to the defendants. Baker's presentence report stated (and the government concedes) that California First had written the loans off as uncollectible *before* Union acquired the bank. In its acquisition of California First, Union may not have assumed the predecessor's claims on loans that had been written off as uncollectible; in any event, the government has not carried its burden of establishing that it did. If Union did not acquire these claims, then California First's stockholders—or whoever else acquired the claims—are the proper recipients of restitution, not Union.[3] Because the government has not established that Union was the victim of the defendants' conduct, we vacate the restitution award. On remand, the district court should determine who suffered the loss from the defendants' conduct. In particular, it should determine whether Union acquired California First's claims against the defendants. *Cf. United States v. Cannizzaro,* 871 F.2d 809, 812 (9th Cir.) (remanding because the district court failed to determine whether the victim had received compensation from a third party for its losses and stating that the defendants may be ordered to repay the third party directly if the third party has paid such compensation), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989).

### III.

Majors also challenges the amount of the restitution order. Majors pleaded guilty to Count Five of the indictment, which charged him with being an accessory after the fact to the supplying of false information on a loan application. The indictment al-

---

**2.** The government suggests that the district court was not required to have a specific statutory basis for ordering restitution. In an apparent effort to avoid the limits on a district court's power to order restitution under the VWPA, the government states that "the district court had the option of ordering restitution not only under 18 U.S.C. § 3663, as it did here, but also as part of its overall sentencing objectives." However, it is settled law that "[f]ederal courts have no inher-

ent power to order restitution." *United States v. Snider,* 957 F.2d 703, 706 (9th Cir.1992) (per curiam).

**3.** But see 18 U.S.C. § 3663(d) (stating that the district court may decline to make a restitution order if it determines that "the complication and prolongation of the sentencing process" outweighs the need to provide restitution).

leged that the loss resulting from the conduct charged in Count Five was $15,000. However, the district court ordered Majors to pay $20,000 in restitution, to cover the losses alleged in Count Five as well as the losses alleged in Count Four (which the government dismissed at the time the parties executed the plea agreement).[4] Because the VWPA only authorizes a district court to order restitution for the losses caused by the specific conduct underlying the offense of conviction, and because the exception to this principle recognized in *United States v. Soderling*, 970 F.2d 529 (9th Cir.1992) (per curiam), *cert. denied*, —— U.S. ——, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993), does not apply here, we vacate the award of restitution and instruct the district court to limit any award against Majors to the statutory maximum of $15,000.[5]

**A.**

◼ In the district court, Majors's counsel only challenged the court's designation of Union Bank as a "victim" under the VWPA. He did not challenge the *amount* of restitution at all.[6] Citing *United States v. Mondello*, 927 F.2d 1463 (9th Cir.1991), the government argues that the failure to raise this issue in the district court precludes the panel from considering it. In *Mondello*, the district court had imposed a fine of $10,000, and the defendant did not challenge this fine in the district court. On appeal, the defendant claimed that the district court had failed to determine whether he had the ability to pay. The *Mondello* opinion did not elaborate on the precise nature of the defendant's ability-to-pay claim. It simply cited the general

rule that this court will not consider an issue raised for the first time on appeal and stated that none of the exceptions to the general rule applied in that case. *See id.* at 1468 (citing *United States v. Kimball*, 896 F.2d 1218, 1219 (9th Cir.1990), *vacated in part on other grounds*, 925 F.2d 356 (9th Cir.1991) (en banc) (per curiam)).

At least one of the exceptions to the general rule applied in *Mondello* applies here. We have held that we will consider a claim raised for the first time on appeal "when the issue is purely one of law." *Kimball*, 896 F.2d at 1219. Majors claims that the district court had no *statutory authorization* to award restitution beyond the loss caused by the specific offense of conviction. This is a purely legal issue. To the extent we must examine Majors's plea agreement to determine whether the *Soderling* exception applies, our examination involves only the legal effect of the terms that are on the face of the agreement. As the court's analysis in *Ramilo* shows (see *infra*), the application of the *Soderling* exception is a legal question which we resolve without examining any extrinsic facts.

**B.**

In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the Supreme Court held that a district court may order restitution under the VWPA *only* for the losses caused by the specific offense of conviction. *See id.* at 416–22, 110 S.Ct. at 1982–85. In this respect, restitution determinations under the VWPA are quite different from sentencing determinations under the Sentencing Guidelines. Under the Guidelines, district courts may take account

---

**4.** Baker pleaded guilty to Count Two, which alleged a $20,000 loss. The district court ordered him to pay $20,000 in restitution, to cover the losses alleged in that count alone.

**5.** In his reply brief, Majors claims for the first time in this case that the restitution order impermissibly treated him as a principal rather than an accessory by requiring him to pay full restitution. Majors relies on 18 U.S.C. § 3, which provides that "[e]xcept as otherwise expressly provided by any Act of Congress, an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment or fined not more than one-half the maximum fine prescribed for the punishment of the principal,

or both." We reject this argument, both because Majors failed to present it sooner and because it lacks merit. By its terms, § 3 serves only to halve the maximum *fine* or term of. *imprisonment*. The provision does not speak of *restitution* at all. If Congress had intended for § 3 to have any effect on the district court's authority to order full restitution in appropriate cases, it would have said so.

**6.** Majors's counsel stated, "I understand that with respect to Mr. Majors it doesn't do anything, and he's willing to repay that $20,000. I bring that up only as to whether it should be in the form of a fine or restitution because of the nature of the victim."

of "relevant conduct" beyond the specific acts underlying the offense of conviction. *See generally* U.S.S.G. § 1B1.3. Under the VWPA, by contrast, a district court may not order restitution for any loss beyond that caused by the offense of which the defendant was convicted.

Our opinion in *United States v. Garcia*, 916 F.2d 566 (9th Cir.1990) (per curiam), illustrates the limitations on restitution awards under the VWPA. Garcia was indicted on two counts of bank robbery. He pleaded guilty to one count, which alleged that he had stolen $1207.00—all of it subsequently recovered—from the First Interstate Bank. The government dismissed the other count, which alleged that he had stolen $1902 from another bank. Apparently finding that, notwithstanding the dismissal, Garcia had committed the second robbery, the district court ordered him to pay $1902 in restitution to the second bank. We reversed, holding that *Hughey* prohibited the district court from ordering restitution for conduct charged in a dismissed count of the indictment. *See id.* at 566–67. *See also United States v. Sharp*, 941 F.2d 811, 815 (9th Cir.1991) ("Even when the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction.").[7]

At first glance, the principle set forth in *Hughey* appears to invalidate the restitution award in this case. Indeed, the facts of this case are quite similar to those in *Garcia*.

Majors pleaded guilty to Count Five of the indictment. This count (as amended) alleged that Majors had been an accessory after the fact to the making of a false statement on a loan application. Specifically, it alleged that Majors received $15,000 on May 8, 1985, as a result of this loan application. The government dismissed Count Four of the indictment, which alleged that Majors had received $5,000 from the bank on April 18, 1985, as a result of the fraudulent loan application. Yet the district court ordered restitution in the amount of $20,000, apparently to cover the losses resulting from both counts. Although Majors may have received the entire $20,000 as a result of the same scheme, the conduct underlying the specific offense of conviction—the receipt of $15,000 on May 8, 1985— caused only a $15,000 loss. By ordering Majors to repay the $5,000 loss resulting from the conduct alleged in Count Four, the district court appeared to violate the principles enunciated in *Hughey*, *Garcia*, and *Sharp*.

However, we have recognized an exception to these principles in cases involving plea bargains. As we explained in *Soderling*, a district court may order restitution "for losses stemming from offenses other than those on which there was a conviction *if* the defendant agrees to such in a plea bargain in return for a promise by the government to drop or not pursue the other offenses." *Soderling*, 970 F.2d at 532; *see generally id.* at 532–34.[8] The government contends that this

---

**7.** In 1990, five years after the conduct constituting the offense in this case, Congress amended the Victim and Witness Protection Act. Among other amendments, Congress added § 3663(a)(2), which states that:

> For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern.

18 U.S.C. § 3663(a)(2) (enacted November 29, 1990). Although a footnote in a per curiam opinion of this court included dicta stating that the addition of § 3663(a)(2) overruled *Sharp*, *see Soderling*, 970 F.2d at 533 n. 8, it is far from clear that the amendment did any such thing. On its face, the new subsection addresses only the question of who is a "victim" for purposes of the Act, not the question of the proper size of a restitution order. Even after *Soderling*, we have

relied on *Sharp* for the proposition that a scheme or conspiracy may not be inferred into a single count. *See United States v. Parrott*, 992 F.2d 914, 918 (9th Cir.1993). However, we need not decide today the continuing vitality of *Sharp*. If the 1990 amendment overruled *Sharp*, then it is detrimental to the accused and may not be applied retrospectively to conduct occurring before its enactment.

**8.** The *Soderling* court relied on our consistent interpretation—both before and after *Hughey*—of the "nearly identical" restitution provisions in the Federal Probation Act. *Id.* at 532–33. Because a long line of precedent in this circuit allowed a district court to enforce a plea bargain by ordering restitution under the FPA beyond the losses caused by the offense of conviction, and because this circuit had also recognized that, absent such an agreement, restitution under the FPA must be limited to the offense of conviction,

exception applies here. Although Majors pleaded guilty pursuant to a plea agreement, he did not agree to pay restitution for the conduct alleged in (the subsequently dismissed) Count Four. Thus, the *Soderling* exception does not apply.

Nowhere in the plea agreement does Majors agree that the court may impose restitution beyond the losses caused by the offense of conviction. The agreement's only mention of the amount of restitution comes in paragraph 11, which sets forth the promises made by the *government.* This paragraph states that the government "will· specifically recommend that the court order restitution be paid in the amount of $20,000 to Union Bank." By its literal terms, this paragraph simply informs Majors of the sentence the government will recommend. It does not state that *Majors* agrees that the court may impose such a sentence. Moreover, no provision of the agreement states that Majors agrees to a level of restitution beyond the loss caused by the offense of conviction "in return for a promise by the government to drop or not pursue the other offenses." *Soderling,* 970 F.2d at 532. The agreement does not mention the dismissed counts at all. It merely sets forth the sentence the government will recommend for the count to which Majors pleaded guilty. The government's motion to dismiss Counts One and Four was *not* part of the written, fully integrated plea agreement.[9] It came in a separate oral motion from the government after the plea agreement was executed in open court. In these circumstances, we cannot conclude that Majors agreed to pay heightened restitution as *consideration* for the government's dropping of Counts One and Four. *Soderling* requires an express agreement on the part of the defendant. The plea agreement in this case does not satisfy that standard.

■ In interpreting plea agreements, "the government is to be held to the literal terms

of the agreement, and ordinarily must bear responsibility for any lack of clarity." *United States v. Anderson,* 970 F.2d 602, 607 (9th Cir.1992) (citations omitted), *amended on other grounds,* 990 F.2d 1163 (9th Cir.1993). We applied this principle in *United States v. Escamilla,* 975 F.2d 568 (9th Cir.1992). In that case, the defendant promised in a plea agreement that he would confess and cooperate with law enforcement in its attempts to prosecute his coconspirators. In exchange, the government agreed to drop two of the three charges against him. Ten weeks after the parties entered into this agreement—and after Escamilla had confessed and given a substantial amount of information to the government—Escamilla failed to satisfy one of the conditions of the agreement. With the consent of Escamilla's attorney, the government revoked the plea agreement and the case went to trial. At trial, the government introduced the confession that had been obtained under the auspices of the plea agreement.

We reversed. In holding that the district court erred in admitting the confession, we relied on the fact that no specific term in the agreement allowed the government to use any confession obtained pursuant to the agreement if the defendant breached the agreement and went to trial. *See id.* at 571 ("The government is 'held to the literal terms of the agreement,' and there is no provision in the agreement authorizing any such use.") (citations omitted) (quoting *United States v. Packwood,* 848 F.2d 1009, 1012 (9th Cir. 1988)). Because the government had "written plea agreements in the past which clearly contemplate the use of the defendant's confession against him should the agreement be breached"—and thus knew how to ensure the use of the confession if it had wanted to—we held that the confession should not have been admitted against the defendant. *See id.*

---

the *Soderling* court felt compelled to recognize a similar exception for plea agreements under the VWPA. *See id.* Although Congress amended the VWPA after *Hughey* specifically to allow a court to order restitution beyond the offense of conviction pursuant to a plea agreement, *see* 18 U.S.C. § 3663(a)(3) (added November 29, 1990), we concluded that this amendment worked no change in the law. Rather, we held that the

amendment merely resolved uncertainties in the interpretation of the statute. *See Soderling,* 970 F.2d at 533 & n. 8.

9. See *United States v. Floyd,* 1 F.3d 867, 870 (9th Cir.1993) (enforcing integration clause in plea agreement).

We have applied the same principles in cases involving awards of restitution. For example, in *United States v. Ramilo*, 986 F.2d 333 (9th Cir.1993), a case quite analogous to this one, we held that a plea agreement did not authorize the imposition of restitution beyond the loss caused by the offense of conviction. In *Ramilo*, the government sought to invoke § 3663(a)(3) because the plea agreement stated that " 'the defendant understands that the court may order restitution ... to the following individuals in the amounts listed'—followed by a list of alleged victims and the amount each claimed to have lost." *Id.* at 334. However, we concluded that such an agreement was insufficient to authorize a grant of restitution beyond the specific offense of conviction. We reasoned that "[t]his was not an agreement that Ramilo would pay restitution in the amounts listed in exchange for a lighter sentence—such an agreement would have read quite differently." *Id.* (citing *Soderling*, 970 F.2d at 531). Rather, the "apparent purpose" of the provision was to ensure that the guilty plea was made knowingly and voluntarily by ensuring that Ramilo had a full appreciation of the maximum penalty.

As in *Ramilo*, an agreement that Majors would pay restitution for Counts Four and Five in exchange for the government's dropping Counts One and Four "would have read quite differently" from the agreement Majors and the government actually executed. Instead of the *government* promising to request $20,000 in restitution, *Majors* would have promised not to object to that amount. Instead of being silent on Counts One and Four, the fully integrated agreement would have included an explicit promise on the part of the government to drop those Counts. In short, an agreement complying with *Soderling* would have closely tracked the language this court used in that case: "the defendant agrees to [pay restitution for unconvicted counts] ... in return for a promise by the government to drop or not pursue the other offenses." *Soderling*, 970 F.2d at 532. Because the government has "written plea agreements in the past which clearly" include a promise by the defendant to pay restitution for unconvicted offenses (as in *Soderling* ), we cannot read the plea agreement in this case to authorize such enhanced restitution. *See Escamilla*, 975 F.2d at 571.

## IV.

We vacate the restitution orders and remand for reconsideration. On remand, the district court should only award restitution on behalf of a person or entity if the government demonstrates that the person or entity has suffered as a result of the conduct underlying the defendants' convictions. Any restitution order addressed to Majors shall not exceed $15,000. Because the district court is to reconsider its prior orders of restitution, we need not address Majors's argument that the district court in its earlier proceeding gave insufficient consideration to his ability to pay.

**VACATED and REMANDED.**