80 F.3d 1419
 96 Cal. Daily Op. Serv. 2539, 96 Daily Journal
D.A.R. 4192,
96 Daily Journal D.A.R. 4329
UNITED STATES of America, Plaintiff-Appellee,
v.
Andre M. REED, Defendant-Appellant.
 No. 95-10118.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1995.
Decided April 11, 1996.
 
 Joyce L. Boudreaux, argued, Larry Kupers, briefed, Assistant Federal Public Defender, San Francisco, California, for defendant-appellant.
 Martha Boersch, Assistant United States Attorney, Oakland, California, for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California, Charles A. Legge, District Judge, Presiding. No. CR-94-00215-CAL.
 Before GOODWIN and REINHARDT, Circuit Judges, and KING, District Judge.*
 REINHARDT, Circuit Judge:
 
 
 1
 This case presents the question of whether a judge may order restitution under the Victim Witness Protection Act, 18 U.S.C. §§ 3663-64, for conduct that is not an element of the offense of conviction. We hold that he may not, with one exception that is not applicable in this case.[1] Accordingly, we vacate the restitution order. On a wholly separate issue, we affirm the district court's decision to enhance the defendant's sentence for reckless endangerment.
 
 
 2
 On February 16, 1994, the San Francisco Police gave chase to a stolen Ford Aerostar van. Towards the end of the chase, the Aerostar reached speeds approaching 75 miles per hour and flew into the air at the top of a hill. When the officers reached the crest of the hill, they saw that the van had crashed into several cars and come to a halt. Police found Andre Reed, the appellant, lying in the street approximately five to ten feet from the van. Another suspect had fled the scene on foot and was never apprehended. The officers searched Reed, a convicted felon, and found a loaded .22 caliber revolver in his pants pocket.
 
 
 3
 On October 25, 1994, Reed pleaded guilty to being a Felon in Possession of a Firearm, a violation of 18 U.S.C. § 922(g)(1). The Presentence Report Recommendation proposed: 1) a two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2; and, 2) the imposition of a restitution order. The prosecutor concurred. Reed claimed that he was not the driver of the van and argued that both the enhancement and the restitution order were therefore inappropriate.
 
 
 4
 At the conclusion of an evidentiary hearing, the court held that Reed was indeed the driver. The court sentenced Reed to 70 months in prison, and ordered him to "make restitution to the maximum amount of $20,000 depending on the claims filed." On appeal, Reed challenges the propriety of both the restitution order and the two-level enhancement.[2]
 
 Standards of Review
 
 5
 We review the legality of a sentence, including an order of restitution, de novo. See United States v. DeSalvo, 41 F.3d 505, 511 (9th Cir.1994). We review a district court's factual findings underlying a sentence for clear error. United States v. Hughes Aircraft Co., 20 F.3d 974, 980 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994).
 
 The Restitution Order
 
 6
 Both parties agree that the court's authority to order restitution arises from the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663-64. The VWPA allows the district court, when sentencing a defendant convicted of an offense under Title 18 of the United States Code, to order that the defendant "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1).
 
 
 7
 On appeal, Reed challenges the restitution order on the grounds that it violates the rule set forth by the Supreme Court in Hughey v. United States, 495 U.S. 411, 412-14, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), that restitution orders under the VWPA can be imposed "only for the loss caused by the specific conduct that is the basis of the offense of conviction."[3] Reed argues that fleeing the police is not part of the conduct underlying his offense of conviction and thus cannot serve as the basis for a restitution order. We agree.
 
 
 8
 The government argued that "Reed's possession of the gun ....included [the] high speed chase." To support its contention that conduct that surrounds the offense of conviction, but which is not an element of that offense, can be the basis for a VWPA restitution order, the government relies almost exclusively on two discredited Sixth Circuit cases that pre-date Hughey.
 
 
 9
 In the first case, United States v. Durham, 755 F.2d 511 (6th Cir.1985), Durham destroyed a vehicle by arson during the course of a bank robbery. Id. at 512. Durham pleaded guilty to bank robbery and was not charged with arson. Id. After an inquiry into the legislative history and specific language of the VWPA, the Sixth Circuit upheld the trial court's restitution order, which included restitution for the burned vehicle, concluding that "Congress intended a 'victim' [within the meaning of the Act] to be a person who suffered injury as a result of the defendant's actions that surrounded the commission of the offense, regardless of whether the actions are elements of the offense charged." Durham, 755 F.2d at 513.
 
 
 10
 In the second case, United States v. Mounts, 793 F.2d 125 (6th Cir.), cert. denied, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), Mounts attempted to blow up a business' safe. Id. at 126. He fled the scene in a Corvette that he had stolen from the business and later collided with a pickup truck, damaging both vehicles. Id. Mounts pleaded guilty to being a convicted felon receiving explosives transported in interstate commerce. Id. The trial court ordered that he pay restitution to the business for stolen items and for the damage to the Corvette. Id. at 127. The Sixth Circuit upheld the restitution order, relying principally on Durham 's broad definition of "victim" within the meaning of the VWPA. Mounts at 127-28.
 
 
 11
 Durham and Mounts, though factually similar to the instant case, do not help the government because those two cases were implicitly overruled by Hughey and thereafter explicitly disavowed by the Sixth Circuit. Moreover, Ninth Circuit cases following Hughey are directly at odds with Durham and Mounts.
 
 
 12
 In Hughey, the defendant's alleged theft and use of 21 credit cards in a fraudulent scheme resulted in a total loss to numerous victims of $90,431. 495 U.S. at 412-14, 110 S.Ct. at 1981. The defendant pleaded guilty to one count of a scheme involving fraudulent use of a credit card in exchange for the government's agreement to forgo prosecution on the remaining counts. Id. The count to which the defendant pleaded guilty concerned the use of one card which led to approximately $10,000 in losses. Id. at 412-16, 110 S.Ct. at 1981-82. The trial court, however, ordered the defendant to pay restitution for the entire $90,431 loss caused by his use of all the cards involved in the scheme. Id. at 414-16, 110 S.Ct. at 1982. The Fifth Circuit affirmed, holding that the VWPA allowed a court to require restitution " 'beyond that amount involved in the offense of conviction when there is a significant connection between the crime of conviction and similar actions justifying restitution.' " Id. at 415, 110 S.Ct. at 1982 (quoting United States v. Hughey, 877 F.2d 1256, 1264 (5th Cir.1989)). The Supreme Court reversed, holding that "the language and structure of the [VWPA] make plain Congress' intent to authorize an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey, 495 U.S. at 413, 110 S.Ct. at 1981 (emphasis added).
 
 
 13
 In United States v. Clark, 957 F.2d 248 (1992), a case that is factually similar to the case before us, the Sixth Circuit, relying on Hughey, repudiated its broad reading of the VWPA in Durham and ensuing cases. In Clark, a jury convicted the defendant of theft of an FBI vehicle and conversion of another FBI vehicle with intent to steal. Id. at 249. During the course of the thefts of the FBI vehicles, the defendant also stole numerous civilian vehicles, at least one of which was stolen for use in connection with the theft of an FBI vehicle. Id. at 249-50. The trial court ordered Clark to pay restitution not only for the FBI vehicles, but also for the civilian vehicles. Id. at 252-53. The Sixth Circuit rejected the government's argument that under Durham the order was valid because the vehicles were stolen during the course of Clark's theft and conversion of the FBI vehicles. The court concluded that:
 
 
 14
 the Court's decision in Hughey forecloses so broad an interpretation of Durham. Indeed, the Court in Hughey explicitly repudiated such a course, finding its narrow reading of the Act more consistent "than ... one that permits an open-ended inquiry into losses resulting from the 'defendant's related course of conduct' or from 'acts that had a significant connection to the act for which conviction was had.' " Hughey, 495 U.S. at 419 n. 4, 110 S.Ct. at 1984 n. 4 (citations omitted).
 
 Clark, 957 F.2d at 253.[4]
 
 15
 Ninth Circuit cases subsequent to Hughey also prohibit the trial court from ordering restitution for conduct that is related to the offense of conviction, but that is not an element of the offense. For instance, in Baker, 25 F.3d 1452 (9th Cir.1994), this court reversed an order requiring restitution for acts for which the defendant had not been convicted, citing Hughey and noting:
 
 
 16
 [R]estitution determinations under the VWPA are quite different from sentencing determinations under the Sentencing Guidelines. Under the Guidelines, district courts may take account of "relevant conduct" beyond the specific acts underlying the offense of conviction. Under the VWPA, by contrast, a district court may not order restitution for any loss beyond that caused by the offense of which the defendant was convicted.
 
 
 17
 Baker, 25 F.3d at 1456-57 (citation omitted).[5] See also United States v. Smith, 944 F.2d 618, 621 (9th Cir.1991) ("[Smith's] entire restitution order ... relates to losses arising from acts for which Smith was convicted, and thus satisfies Hughey ") (emphasis added); accord United States v. Broughton-Jones, 71 F.3d 1143, 1149 (4th Cir.1995) (absent a plea agreement requiring greater restitution, a court can only order restitution for "loss caused by offense of conviction"); United States v. Cronin, 990 F.2d 663, 666 (1st Cir.1993) (vacating portions of restitution order imposing liability for unconvicted counts in mail fraud scheme; looking at "the entire picture" is correct for purposes of enhancement of prison terms under the Guidelines, but restitution is a "separate matter"); United States v. Wainwright, 938 F.2d 1096, 1098 n. 3 (10th Cir.1991) (" Hughey overruled this court's contrary opinion in United States v. Duncan, 870 F.2d 1532 ... permitting a court to order restitution for 'other criminal acts that had a significant connection to the act for which conviction was had' ").[6]
 
 
 18
 After Hughey was decided, Congress amended the VWPA. That amendment, designed in part to overrule Hughey, provides:
 
 
 19
 For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.
 
 
 20
 18 U.S.C. § 3663(a)(2) (emphasis added). The amendment is of no avail to the government here because it did not alter the basic rule enunciated in Hughey: restitution may only be imposed for conduct that constitutes an element of the offense. As we said in United States v. DeSalvo, 41 F.3d 505, 515 (9th Cir.1994), the 1990 amendment was intended to overrule Hughey as interpreted by cases such as United States v. Sharp, 941 F.2d 811, 815 (9th Cir.1991), in which we said that "[e]ven where the offense of conviction involves a conspiracy or scheme, restitution must be limited to the loss attributable to the specific conduct underlying the conviction."
 
 
 21
 Under the amended statute, when someone is convicted of a crime that includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, the court can order restitution for losses resulting from any conduct that was part of the scheme, conspiracy, or pattern of criminal activity. For instance, if someone is convicted of a conspiracy, the court can order restitution for damage resulting from any conduct that was part of the conspiracy and not just from specific conduct that met the overt act requirement of the conspiracy conviction. The 1990 amendment, however, does not permit courts to order restitution for acts of related conduct when the defendant was not convicted of an offense that includes as an element a scheme, conspiracy, or pattern of criminal activity. See DeSalvo, 41 F.3d at 515; accord United States v. Kones, 77 F.3d 66, 70 (3rd Cir.1996) (noting that under 1990 amendment, "where a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y"); United States v. Clark, 957 F.2d 248, 253 (6th Cir.1992) ("Section 3663(a)(2) by its terms extends only to those crimes where a scheme, conspiracy, or pattern of criminal activity is an element of the offense.") (emphasis in original). The 1990 amendment is not relevant in this case because Reed was not convicted of an offense that has as an element a scheme, conspiracy, or a pattern of criminal activity.The Reckless Endangerment Enhancement
 
 
 22
 Reed also asserts that the two-level enhancement for reckless endangerment during flight is invalid. We disagree.
 
 
 23
 The district court's factual findings underlying a sentence are reviewed for clear error. Hughes Aircraft Co., 20 F.3d at 980. "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." Concrete Pipe and Prod. of Cal. Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 623-25, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993) (internal quotation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 24
 The government's evidence that Reed was the driver consisted of the testimony of police officers Glembot and Sloan, the officers who spotted the van and gave chase. Reed claims that the officers lied in their testimony, and notes correctly that there is an inconsistency between the police report and the officers' testimony as to the direction in which the officers were traveling when they spotted the van. The trial judge--whose factual findings, especially those about the credibility of witnesses, are entitled to deference--found both officers' testimony to be credible. The court credited Officer Glembot's explanation of the inconsistency--that it resulted from his inadvertent reversal in his report of the street names describing the officers' line of direction.[7]
 
 
 25
 Reed presented no evidence refuting Officer Glembot's explanation for the error in the report. Nor did Reed offer evidence suggesting that the officers were not travelling eastbound on Fredrick when they saw Reed travelling northbound on Ashbury. Similarly, Reed offered no credible evidence to refute the officers' assertion that he was the driver of the van.[8] Reed did submit a declaration in which he claimed that an unidentified acquaintance driving the van spotted him standing on a corner and offered him a ride. Reed, however, did not testify at the hearing and his declaration was therefore not subject to cross-examination. Nor did he offer evidence corroborating the declaration. The court admitted the declaration into evidence but gave it "little weight".
 
 
 26
 Given the discrepancy between the police report and the officers' testimony, there is some doubt about whether or not Reed was the driver of the van. Nonetheless, the judge's finding that Reed was the driver, a finding that need only be supported by a preponderance of the evidence, was not clearly erroneous. Accordingly we affirm the sentencing enhancement.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 As explained below, a restitution order may cover conduct that is not an element of the offense provided that 1) a scheme, conspiracy or pattern of criminal activity is an element of the offense and 2) the conduct in question was part of that scheme, conspiracy or pattern of criminal activity
 
 
 [2]
 Reed also challenges the restitution order as improper, because no vehicle owner had submitted a claim for restitution by the time Reed submitted his opening brief on appeal. We do not need to reach the merits of that theory because we vacate the restitution order on a different ground
 
 
 [3]
 The government, citing United States v. Haggard, 41 F.3d 1320, 1329 (9th Cir.1994), states in rather cursory fashion that this court should not entertain Reed's argument because he failed to raise it below. This court, however, "will consider a claim raised for the first time on appeal 'when the issue is purely one of law.' " United States v. Baker, 25 F.3d 1452, 1456 (9th Cir.1994)(appeal of restitution order)
 
 
 [4]
 In United States v. Cobbs, 967 F.2d 1555 (1992), the Eleventh Circuit, citing Clark, rejected the government's Durham /Mounts-based argument that the trial court properly ordered restitution for losses stemming from offenses other than the offense of conviction. See id. at 1558-59. The Eleventh Circuit, like the Sixth Circuit, concluded that Hughey had tacitly overruled Durham and Mounts. Id
 
 
 [5]
 The government cites United States v. Haggard, 41 F.3d 1320 (9th Cir.1994), for the proposition that this court has implicitly rejected Reed's argument that an element of the crime of conviction must cause the loss. The government's reliance on Haggard is misplaced. In Haggard, the defendant falsely told the FBI and a grand jury that he knew where a child's body had been hidden by the child's abductor and that he knew the identity of the assailant. Haggard, 41 F.3d at 1323-24. Haggard pleaded guilty to obstructing an FBI investigation, making false statements to the FBI, obstructing justice by giving false testimony to a jury, and making false declarations to a grand jury. The court upheld the district court's order of restitution for income lost by the mother, who suffered debilitating psychological harm when the hoax came to light. Unlike the instant case, the acts that caused the mother's loss of income (lying to the FBI and a grand jury) indeed were elements of the convicted offenses. See id. at 1323-24
 
 
 [6]
 See also Clark, 957 F.2d 248 (6th Cir.1992) and Cobbs, 967 F.2d 1555 (11th Cir.1992), discussed supra at 1422 & n. 4
 
 
 [7]
 Reed further contends that statements one of the officers made to a defense investigator are inconsistent with the officers' later testimony in court. Notwithstanding Reed's claim to the contrary, Officer Glembot's statements to defense investigator Frink do not seriously undermine the officers' testimony. According to Frink's testimony, Officer Glembot told Frink that he knew that "Andre Reed was the driver because [the officers] had the opportunity to observe the driver throughout the chase" and that the officers "followed the car long enough to get a good look at the driver and it was Reed."
 Reed claims that Officer Glembot's subsequent testimony shows that he could not have observed Reed throughout the chase. Glembot testified that when he made the statements to Frink, what he meant was that after he initially saw Reed in the driver's seat, he did not see him switch seats with the passenger. The judge accepted Glembot's explanation as plausible and, while the question may be close, we cannot say he clearly erred in doing so.
 
 
 [8]
 Reed claims that the fact that he was found lying behind the van toward the passenger side shows that he was not driving the van. Officer Glembot testified, however, that the driver-side door of the van was jammed shut as a result of the accident. His testimony was undisputed. Since the driver's door was jammed, even the driver would have been forced to exit from the passenger-side door