54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
French MOORE (94-5610), Alvin Bonner (94-5756), Defendants-Appellants.
 Nos. 94-5610, 94-5756.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1995.
 
 Before: MERRITT, Chief Judge; GUY and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant French Moore pleaded guilty to possession with the intent to distribute crack cocaine. Pursuant to his plea agreement, Moore reserved the right to appeal the denial of his previously filed suppression motion. Defendant Alvin Bonner was convicted of two counts of federal narcotics violations. On appeal, Bonner challenges the district court's denial of his suppression motion and also challenges the sufficiency of the evidence to support his conviction under 18 U.S.C. Sec. 924(c) for use of a firearm in connection with a drug trafficking offense. For reasons explained below, we affirm.
 
 I.
 
 2
 On December 8, 1993, a confidential informant gave information to Chattanooga Police inspector Larry Ellis that Diallo Novene and defendants Bonner and Moore were selling cocaine and marijuana from an apartment occupied by Novene and Bonner. The informant told Ellis that he had been in this apartment within the previous 72 hours and had personally seen drugs there.
 
 
 3
 The next day Ellis surveilled the apartment. During the surveillance, he saw seven people, in quick succession, come and go from the premises. Ellis, a 13-year veteran of the police department, concluded that these observations were consistent with the illegal sale of drugs. Later that morning, he obtained a search warrant.
 
 
 4
 At approximately 5:30 p.m. on that day police officers, including Ellis, executed the warrant. As they approached the apartment announcing they were executing a search warrant, they could hear individuals yelling the words "bum rush."[1] They saw one individual run out of the kitchen and into another room.
 
 
 5
 The officers forcibly entered the apartment, and immediately smelled marijuana smoke. They found Moore and two others in the kitchen. Moore was sitting at, or standing by, a table with a quantity of marijuana on it. Police officer Larry Bowman ordered Moore to get on the floor until the apartment had been secured. Bowman then conducted a pat down search of Moore. During the course of the pat down, Bowman grabbed the outside of the jacket Moore was wearing and squeezed it to see if there was a weapon. As he did so, Bowman felt a substance which he said he immediately recognized by its feel as crack cocaine. Bowman reached into Moore's jacket pocket and removed two packets of crack cocaine. Police then placed Moore under arrest. Before putting Moore into the patrol car, an officer searched Moore again and found still more crack cocaine.
 
 
 6
 During the search of a bedroom closet, police found a cigar box containing crack cocaine and a small amount of currency. Near the box, police discovered two loaded firearms,[2] powdered cocaine, and more currency. Police also found a sales receipt for one of the firearms, which had been purchased by Bonner. Bonner, who was in the house at the time of the search, was first encountered by the police when he was returning to the kitchen from another part of the house.
 
 
 7
 Bonner testified at trial that he owned the drugs and one of the firearms. The other firearm, which he claimed did not work, belonged to his girlfriend -- he was repairing it for her. Bonner testified he started selling the drugs in April 1993.[3] Bonner purchased his firearm during the time period he sold crack cocaine, but claimed he only used the firearm for target practice.
 
 
 8
 After Bonner and Moore were indicted on three counts of federal drug law violations, they both filed motions to suppress, which were denied. Shortly after the denial of his suppression motion, Moore pleaded guilty to possession with intent to distribute crack cocaine, 21 U.S.C. Sec. 841(a)(1), reserving in his plea agreement the right to appeal the district court's denial of his motion to suppress. A jury convicted Bonner of violating 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 924(c).
 
 
 9
 The district court sentenced Moore to 150 months incarceration with 8 years of supervised release, and Bonner to a total of 211 months incarceration with 5 years of supervised release.
 
 II.
 
 10
 Moore appeals the denial of his motion to suppress. In reviewing such a denial, we review findings of fact in the light most favorable to the government, upholding such findings if they are not clearly erroneous. United States v. Leake, 998 F.2d 1359, 1362 (6th Cir. 1993). We review questions of law de novo. Id.
 
 
 11
 Moore challenges the propriety of the pat down search of his person, arguing the search was unlawful under Terry v. Ohio, 392 U.S. 1 (1968); and second, the search was not a proper "protective search" under Maryland v. Buie, 494 U.S. 325 (1990); or a "protective sweep" under United States v. Hatcher, 680 F.2d 438 (6th Cir. 1982). The government, in contrast, defends the lawfulness of the search not only as a proper search under Terry and Minnesota v. Dickerson, 113 S. Ct. 2130 (1993), but also as a valid search incident to arrest.
 
 
 12
 We find that the pat down search of Moore was a lawfully conducted search incident to arrest, and therefore we do not address the merits of the other arguments by Moore or the government. Police may conduct a warrantless search incident to an arrest. New York v. Belton, 453 U.S. 454, 461 (1981). Such a search may occur prior to the arrest, so long as probable cause exists to make the arrest at the time of the search, and so long as the search occurs within a reasonable time of the arrest. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980). As the Supreme Court has explained: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." Id. In this case, the evidence clearly supports probable cause for an arrest. When the police arrived at the apartment, they not only detected the odor of marijuana, they also spotted Moore sitting with marijuana on a table in front of him. In addition, police had been told by the confidential informant that Moore was selling cocaine and marijuana out of Bonner's apartment. Given Moore was formally arrested shortly after the pat down search, the search was held within a reasonable time of the arrest satisfying Rawlings.
 
 III.
 
 13
 We now turn to Bonner's appeal. Bonner first challenges the adequacy of the search warrant. He claims that under the totality of the circumstances, the affidavit on which the search warrant was based did not provide probable cause.
 
 
 14
 In reviewing the propriety of a search warrant, we review the evidence that the magistrate had before him "to ensure that [he] had a 'substantial basis for ... conclud[ing]' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). In Gates, the Court adopted a totality of the circumstances test for the issuance of search warrants. Under that test:
 
 
 15
 The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
 
 
 16
 Id. at 238. As the Court went on to explain: "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." 462 U.S. at 243-44 n. 13.
 
 
 17
 In this case, we have no doubt that the issuing magistrate was correct in finding there was a "probability" or a "substantial chance" of criminal activity at Bonner's residence. Ellis's affidavit explained that he had received information from a confidential informant whom he had known for a year, and the informant had provided information which had led to the arrest and conviction of at least one individual for narcotics law violations. The confidential informant told Ellis that he had been at Bonner's apartment within the previous 72 hours and had personally seen cocaine and marijuana in Bonner's possession. We believe that under the circumstances this information satisfies Gates. We find no error in the denial of Bonner's motion to suppress.[4]
 
 
 18
 Bonner also challenges the sufficiency of the evidence to support his conviction under 18 U.S.C. Sec. 924(c) for use of a firearm during a drug trafficking crime.[5] We review such a claim to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Clark, 957 F.2d 248, 250 (6th Cir. 1992). We view the evidence in the light most favorable to the government. Id.
 
 
 19
 Bonner claims that he was convicted on the basis of his possession of a weapon during a drug trafficking crime, and that the government did not establish a nexus between the possession of the firearm and the predicate drug trafficking offense required to uphold his conviction. We disagree.
 
 
 20
 While "section 924(c)(1) will not support conviction for mere possession of a firearm during the course of criminal conduct," United States v. Brown, 915 F.2d 219, 224 (6th Cir. 1990) (citing United States v. Lyman, 892 F.2d 751, 753 (8th Cir. 1989)), this is not a case of "mere" possession. Rather this case falls within that rationale of a number of cases which have adopted the "fortress analogy" theory. E.g., United States v. Henry, 878 F.2d 937, 944 (6th Cir. 1989). Under that theory,
 
 
 21
 if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, [then] such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 22
 Id. (quoting United States v. Matra, 841 F.2d 837, 843 (8th Cir. 1988)). In general, firearms found in the home in close proximity to drugs and in ready accessibility for use in drug trafficking will support a prosecution under Sec. 924(c). In this case, the government introduced evidence at Bonner's trial demonstrating a connection between the firearms[6] discovered in a closet and the underlying drug trafficking business being conducted out of his home. The firearm was found on top[7] of a box containing crack cocaine and a small amount of currency. Indeed, Bonner concedes the proximity of the firearm to the drugs.
 
 
 23
 Bonner cites United States v. Brown as support for his claim that the evidence supporting his conviction was insufficient as a matter of law. Bonner's reliance on Brown is misplaced. While in Brown we did find there was sufficient evidence to support a conviction under Sec. 924(c)(1) on the ground that the defendant carried a firearm on his person to protect the proceeds from his drug sales, we did not mean to suggest that a defendant can only be convicted under that statute when he carries a firearm on his person during the commission of a drug trafficking offense.[8] The "fortress analogy" theory, to which we adverted in Brown, 915 F.2d at 226, precludes any such argument. Bonner claims the evidence of the drug trafficking offense was found in a closet in which a hair dryer and other non-incriminating evidence was discovered. In our view, the presence of these other items does not change the analysis.
 
 
 24
 Defendant argues that the gun was not ready to fire since it was stored in a gun case. That the weapon was in a gun case, however, cannot possibly preclude a juror from concluding that the weapon was "at the ready," any more than its location in the closet could. In our view, a reasonable juror could conclude that the firearm was kept "at the ready" for defendant's use if circumstances arose in which such use became necessary. United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989). Defendant further argues that the firearm was not in a strategic location since it was located in the closet and not, for example, kept near the front or rear door of defendant's apartment. While defendant correctly speaks of the "strategic" positioning of a firearm, he does not point us to any case in which we have held that we will let a conviction under Sec. 924(c) stand only where a firearm is placed near an entrance or exit of a location used for the sale of drugs.
 
 
 25
 Finally, Bonner argues he did not attempt to gain access to the firearms to achieve escape. That defendant did not rush to his bedroom closet and take out a firearm and start shooting at police officers at the time of his arrest does not mean that he could not have done so or that he could not have used the firearms "during and in relation to" a drug trafficking crime.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The term "bum rush" is a slang term commonly used in Chattanooga to refer to a narcotics raid
 
 
 [2]
 Whether the guns were loaded was a fact that was in dispute at trial
 
 
 [3]
 Bonner claimed he sold drugs "[j]ust on the front porch" of his apartment. (App. at 73.)
 
 
 [4]
 Because of our holding that the affidavit provided probable cause to support the issuance of the search warrant, we need not consider Bonner's other arguments relating to this issue
 
 
 [5]
 18 U.S.C. Sec. 924(c)(1) provides, in relevant part:
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment ifcommitted by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ....
 
 
 [6]
 As mentioned earlier, there were two firearms found in Bonner's bedroom closet. One of them belonged to Bonner's girlfriend. Bonner had possession of this weapon ostensibly to repair it. We do not need to address the question of whether Bonner's possession of this weapon could give rise to a conviction under Sec. 924(c), since we find that Bonner's possession and ownership of the other firearm, which functioned properly, does support the conviction
 
 
 [7]
 Bonner contends that the gun was under the box. Whether the gun was on top of or below the box is a distinction without a difference for the purposes of our analysis here. Either way, it was in very close proximity to the drugs
 
 
 [8]
 In the course of relying on Brown, Bonner claims that "there is no evidence in the record that Mr. Bonner hid the weapons or otherwise attempted to conceal their presence so that their concealment could facilitate the drug crime by giving him security and confidence to undertake the criminal act." (Bonner's br. at 13.) Bonner directs our attention on this point to United States v. Payero, 888 F.2d 928 (1st Cir. 1989). We have examined this case and conclude that it does not support Bonner's claim. We, therefore, also reject this portion of defendant's argument
 Defendant also relies on our decision in United States v. Clemis, 11 F.3d 597 (6th Cir. 1993), cert. denied, Arnold v. United States, 114 S. Ct. 1858 (1994)), arguing that in this case there was no evidence of "facilitation" as required to support a conviction under Sec. 924(c). We do not agree, as our discussion of the "fortress analogy" theory explains.