**UNITED STATES of America,**
**Plaintiff–Appellee.**

v.

**Roger HAGGARD, Defendant–Appellant.**

**No. 93–10559.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1994.

Decided Dec. 7, 1994.

Claire M. Leary, Asst. Federal Public Defender, San Francisco, CA, for defendant-appellant.

Martha Boersch, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: FLETCHER, HALL, and WIGGINS, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant Roger Haggard challenges the criminal sentence imposed upon him by the United States District Court for the Northern District of California. For the reasons that follow, we affirm.

**I.**

In 1988, eight-year-old Michaela Garecht was abducted near her home in Hayward, California. She has not been seen since. A few years after the kidnapping, appellant Haggard contacted the Federal Bureau of Investigation ("FBI") and claimed to know the whereabouts of Michaela's body and the identity of her assailant. At the time he contacted the FBI, Haggard was in state prison in Indiana serving time for a burglary conviction.

During a series of interviews with the FBI in late 1991 and 1992, Haggard spun an

elaborate tale about Michaela's kidnapping and murder. Skeptical investigators at first declined to pursue Haggard's story. Upset by this, Haggard wrote a November 1992 letter to the San Francisco Chronicle in which he claimed to know the identity of Michaela's assailant and the location of her body. Haggard wrote that he was assisting the FBI because he wanted to put Michaela's parents at ease and allow them to give their daughter a proper burial.

Not long after Haggard wrote the letter, the FBI called his bluff by bringing him to California to testify before a federal grand jury. During his grand jury testimony, Haggard repeated his story about Michaela's kidnapping and murder. Haggard also promised to show FBI agents exactly where Michaela's body was dumped and where her supposed assailant lived. The next day, Haggard led FBI agents on a four-hour, 100–mile wild goose chase around the Bay Area. At the end of the trip, Haggard confessed to making the whole story up, saying that he thought it would win him favorable treatment from the Indiana parole board.

As would be expected, when Haggard's cruel hoax came to light, the effect on Michaela's family was traumatic. Initially, when family members learned someone had come forward with new information in the case, they grew hopeful that their ordeal would be over shortly. Haggard himself encouraged their false hopes, saying in one television interview viewed by the family: "I hope Michaela's mother's mind is more at ease knowing it will soon be over." When the truth came out that Haggard had been lying the whole time, the entire family suffered renewed emotional torment. Most affected was Michaela's mother, Sharon Nemeth. With her grief refreshed, Nemeth took physically ill and was forced to go on disability leave from her job.

On February 12, 1993, a federal grand jury returned an eleven-count indictment against Haggard. Just before his case was to go to trial, Haggard pleaded guilty to one count of obstructing an FBI investigation in violation of 18 U.S.C. § 1505 (Count 1), two counts of making false statements to the FBI in violation of 18 U.S.C. § 1001 (Counts 2 and 6), one count of obstructing justice by giving false testimony to a grand jury in violation of 18 U.S.C. § 1503 (Count 7), and two counts of making false declarations to a grand jury in violation of 18 U.S.C. § 1623 (Counts 8 and 9). In the plea agreement, Haggard expressly waived his right to appeal any sentence "within the Sentencing Guidelines range which the district judge determines to be applicable in [his] case."

The district court sentenced Haggard to 78 months in prison, ordered him to pay $6,836 in restitution, and imposed a $4,000 fine. In calculating Haggard's prison sentence under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the court added a two-level Vulnerable Victim adjustment pursuant to section 3A1.1, as well as a three-level adjustment for substantial interference with the administration of justice under section 2J1.2(b)(2).[1] The court then subtracted two levels pursuant to section 3E1.1, after finding that Haggard had accepted responsibility for his behavior. With an adjusted total offense level of 15 and a criminal history category of VI, the Guidelines recommended a sentencing range of 41 to 51 months.

The district court, however, gave Haggard a sentence beyond that recommended by the Guidelines. To do so, the court relied upon the four following upward departures: (1) a one-level increase under section 5K2.3, (2) a one-level increase under section 5K2.8, (3) a two-level increase under section 4A1.3, and (4) a one-level increase under section 5K2.5. With these upward departures, the Guidelines recommended a sentence of 70 to 87 months. The district court imposed a 78–month sentence.

On appeal, Haggard attacks the four upward departures, as well as the Vulnerable Victim adjustment, the $6,836 restitution order, and the $4,000 fine. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction of Haggard's

---

1. Unless otherwise noted, all Guidelines references are to the Guidelines effective November 1, 1992.

appeal of his criminal sentence pursuant to 18 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

■ Before reaching the merits of Haggard's appeal, we must first address the government's argument that Haggard's plea agreement bars two of the issues raised in this appeal. As noted, Haggard expressly agreed to waive his right to appeal any sentence within the applicable Guidelines sentencing range.

The government admits that the 78–month sentence Haggard received was not within the 41–to–51–month sentencing range the court determined to be applicable in this case. Nevertheless, the government argues that Haggard should be precluded from appealing his $4,000 fine, because the fine indisputably was within the applicable Guidelines range. Similarly, the government claims that Haggard should be barred from appealing the section 3A1.1. Vulnerable Victim adjustment, because the adjustment was used to calculate the 41–to–51–month sentencing range.

■ We review de novo the question of whether Haggard waived his statutory right to appeal. *United States v. Bolinger,* 940 F.2d 478, 479 (9th Cir.1991). "[A]n express waiver of the right to appeal in a negotiated plea of guilty is valid if knowingly and voluntarily made." *Id.* at 480. Haggard does not dispute that he expressly, knowingly, and voluntarily waived his right to appeal any sentence within the applicable Guidelines range.

Haggard does, however, object to the government's attempt to break up piecemeal his waiver of appeal. He argues that he waived his right to appeal on the express condition that his sentence be within the applicable Guidelines range. Given that his actual sentence indisputably exceeded the applicable Guidelines range, he argues that his waiver is inoperative. We agree.

"[A] waiver of the right to appeal would not prevent an appeal where the sentence imposed is not in accordance with the negotiated agreement." *United States v. Navarro–Botello,* 912 F.2d 318, 321 (9th Cir.1990), *cert.*

*denied,* ― U.S. ――, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992). The plain terms of Haggard's plea agreement preserve his right to appeal in the event his actual sentence exceeded the Guidelines range. *See Bolinger,* 940 F.2d at 480 (instructing courts to examine the "plain meaning" of the plea agreement). There can be no doubt that Haggard's 78–month sentence exceeds the applicable 41–to–51–month sentencing range. Haggard may appeal his entire sentence.

## III.

We turn now to the merits of Haggard's appeal. He first complains that the district court erred in adjusting his base offense level upward under the so-called Vulnerable Victim provision of Guidelines section 3A1.1. Section 3A1.1 provides:

> If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

U.S.S.G. § 3A1.1. In the accompanying commentary, the Commission noted that this adjustment "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." *Id.,* comment. (n.1).

■ We review de novo the district court's construction and interpretation of the Guidelines' sections on victim-related adjustments. *United States v. Peters,* 962 F.2d 1410, 1415 (9th Cir.1992). We review the district court's factual findings for clear error. *Id.* at 1416.

■ Haggard's first line of attack is a legal one. He argues that under section 3A1.1, Michaela's family members cannot be considered victims of his crimes of obstructing justice and making false statements to the FBI and the grand jury. According to Haggard, the only victim of his crimes was the federal government, because the statutes under which he was convicted were designed to protect the government, not private individuals such as Michaela's family members. We decline to read section 3A1.1 so narrowly.

■ We hold that courts properly may look beyond the four corners of the charge to the defendant's underlying conduct in determining whether someone is a "vulnerable victim" under section 3A1.1. By the words of the provision itself, no nexus is required between the identity of the victim and the elements of the crime charged. *See* U.S.S.G. § 3A1.1. Moreover, the Guidelines specifically instruct the district court to take into account in adjusting the defendant's base offense level "all harm" the defendant causes. U.S.S.G. § 1B1.3(a)(3). We conclude that even though the harm Haggard caused Michaela's family members was not an element of any of the crimes of which he was convicted, the district court did not err in considering them "vulnerable victims" for purposes of section 3A1.1.

In so holding, we follow the lead of the majority of other circuits that have addressed this question. *See, e.g., United States v. Echevarria,* 33 F.3d 175, 180–81 (2d Cir.1994) (vulnerable victim need not be victim of the offense of conviction); *United States v. Lee,* 973 F.2d 832, 833–34 (10th Cir.1992) (same); *United States v. Yount,* 960 F.2d 955, 957–58 (11th Cir.1992) (same); *United States v. Bachynsky,* 949 F.2d 722, 735 (5th Cir.1991) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 150, 121 L.Ed.2d 101 (1992); *United States v. Callaway,* 943 F.2d 29, 31 (8th Cir.1991) (dictum). *But see United States v. Wright,* 12 F.3d 70, 73 (6th Cir.1993) (vulnerable victim must be victim of defendant's offense of conviction).

Haggard next attacks the district court's factual findings. He challenges the court's finding that Haggard specifically targeted Michaela's family as the object of his hoax. He further challenges the court's finding that Michaela's family members were in fact "unusually vulnerable" or "otherwise particularly susceptible" to the harm Haggard visited upon them.

■ The district court's findings are not clearly erroneous. *See Peters,* 962 F.2d at 1416 (reviewing for clear error). The record amply supports the district court's determination that Haggard specifically targeted Michaela's family. Likewise, the record clearly illustrates the family's particular susceptibility to Haggard's criminal charade.[2] We find no error in the application of the two-level Vulnerable Victim adjustment of section 3A1.1.

## IV.

Haggard also challenges the four upward departures the district court made in calculating the appropriate sentencing range.

■ Our review of a departure from the sentencing guidelines range consists of three steps. *United States v. Lira–Barraza,* 941 F.2d 745 (9th Cir.1991) (en banc). First, we determine whether the district court had legal authority to depart. *Id.* at 746. Second, we review for clear error the district court's factual findings supporting the departure. *Id.* at 747–48. Finally, we ensure that the extent of the departure was reasonable. *Id.* at 748. Haggard does not dispute this third factor on appeal.

## A.

■ Haggard first challenges the upward departure the district court made pursuant to section 5K2.3, which authorizes a departure "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense." U.S.S.G. § 5K2.3. Haggard argues that Michaela's family is not a "victim" within the meaning of section 5K2.3. We disagree.

Our analysis begins with *United States v. Hoyungowa,* 930 F.2d 744 (9th Cir.1991). In that case, we held that section 5K2.3 applies only to the "direct victims" of the charged offense. *Id.* at 747. We reversed an upward departure made on the basis of the psychological injury suffered by the family of a murdered federal officer, because the family

---

**2.** Haggard's bare assertion that Michaela's family was no more vulnerable than any other family of a kidnapped child misses the point. The appropriate inquiry compares Michaela's family to ordinary victims of perjury and obstruction of justice. U.S.S.G. § 3A1.1; *cf. United States v. Moree,* 897 F.2d 1329, 1335 (5th Cir.1990) (focusing on ordinary victims of the "type of crime" of which defendant was convicted).

was at best an incidental victim of the murder. "[Section 5K2.3] applies by its plain terms only to the direct victim of the crime and not to others affected by the crime, such as [the murdered officer's] family." *Id.; see also United States v. Graves*, 908 F.2d 528, 530–31 (9th Cir.1990) (holding that the "victim" for purposes of section 2A2.2(b)(3) must be the victim of the crime charged).

In this case, there were two direct victims of Haggard's crimes. Obviously, Haggard's action in obstructing justice and lying to the FBI and the grand jury directly victimized the federal government. Just as clearly, Haggard directly targeted and victimized Michaela's family. Rather than simply making up a story about some imaginary murder victim, Haggard specifically singled out Michaela Garecht and her family as the object of his criminal scheme. He deliberately and repeatedly lied for the express purpose of affecting Michaela's family. In these circumstances, Michaela's family was a direct victim of Haggard's criminal conduct. The district court did not err in considering under section 5K2.3 the psychological injury the family suffered as a result of Haggard's crimes.

■ Haggard also disputes the gravity of the psychological injury Michaela's family suffered. The record amply supports a finding that Michaela's mother suffered serious psychological and physical impairment as a result of Haggard's criminal conduct. The district court did not err. *See Lira–Barraza*, 941 F.2d at 746–47 (reviewing for clear error).

■ Haggard finally argues that an upward departure under section 5K2.3 constitutes impermissible double counting. According to Haggard, the psychological harm he caused Michaela's family already has been fully accounted for by the two-level upward adjustment he received under the Vulnerable Victim provision of section 3A1.1. He asserts to increase his punishment under section 5K2.3 for the same psychological harm would be improper double counting, citing *United States v. Reese*, 2 F.3d 870, 895 (9th Cir.1993), *cert. denied*, ___ U.S. ___, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994).

■ There is no double counting if the extra punishment is attributable to different aspects of the defendant's criminal conduct. *See Reese*, 2 F.3d at 894–95. Double counting occurs when one Guidelines provision "is akin to a lesser included offense of another, yet both are applied." *Id.* (internal citation and quotation omitted). Such is not the case here.

The two provisions in question account for different aspects of the defendant's criminal conduct. One section focuses on the psychological harm the defendant caused his victims. *See* U.S.S.G. § 5K2.3. The other section accounts for the defendant's choice of victims; it meets out extra punishment for defendants who prey on unusually vulnerable victims. *See* U.S.S.G. § 3A1.1. There was no double counting. *See United States v. Astorri*, 923 F.2d 1052, 1055, 1058–59 (3d Cir.1991) (upholding both adjustments).

**B.**

Haggard next challenges the upward departure the district court made pursuant to section 5K2.8, which provides:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guidelines range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

Guideline Section 5K2.8.

■ Haggard's first attack again focuses on who can be considered a victim for purposes of the sentencing guidelines. He argues that Michaela's family members were not victims within the meaning of section 5K2.8. We disagree. Even assuming section 5K2.8 applies only to the "direct victims" of Haggard's criminal conduct, *see Hoyungowa*, 930 F.2d at 747, Michaela's family, like the federal government, is such a direct victim.

■ We now turn to the question of whether the district court had legal authority to depart. *See Lira–Barraza*, 941 F.2d at 746. We hold that it did. Section 5K2.8 authorizes a departure if the defendant's

criminal conduct was *"unusually* heinous, cruel, brutal, or degrading" to the victim. U.S.S.G. § 5K2.8 (emphasis added). In other words, departure is appropriate if the defendant's cruelty or degradation to the victim go beyond that inherently associated with the crime.

Our focus therefore must be on whether Haggard's actions were unusually cruel or degrading within the universe of obstruction of justice and lying to the FBI and the grand jury. *See United States v. Kelly,* 1 F.3d 1137, 1143 (10th Cir.1993). We find that it was. The crimes for which Haggard was sentenced do not account for extreme cruelty and degradation.[3] The district court had authority to depart.

■ We proceed to the question of whether sufficient evidence supports the district court's finding that Haggard's conduct was in fact unusually cruel and degrading to Michaela's family. *Lira–Barraza,* 941 F.2d at 746–47 (reviewing for clear error). Haggard deliberately misled an unsuspecting family into believing that their daughter was dead and buried in a plastic tarp. On this record, the district court's finding of unusual cruelty and degradation was not clearly erroneous.

### C.

■ Haggard also challenges the district court's upward departure under section 5K2.5, which authorizes a departure if "the offense caused property damage or loss not taken into account within the guidelines." U.S.S.G. § 5K2.5. The district court found that the government's financial loss justified a one-level upward departure. Haggard argues that this departure constituted impermissible double counting. He contends that the district court already had taken into account the government's financial loss in adjusting his base offense level upward three levels pursuant to section 2J1.2(b)(2).[4]

■ We begin by noting that "there is nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." *Reese,* 2 F.3d at 895. "[T]he court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0.

The court found that double counting the financial loss was appropriate in this case because the guidelines did not adequately account for the harm Haggard caused. We agree. Haggard does not dispute the court's finding that the FBI wasted approximately $89,000 unraveling Haggard's twisted tale. The three-level adjustment under section 2J1.2(b)(2) did not adequately account for this loss. The district court did not err in departing upward.

### V.

Haggard also argues that he should not be required to pay restitution for his crimes. The district court ordered Haggard to pay Michaela's mother $6,836 in restitution for the income that she lost as a result of losing her job and going on disability. *See* 18 U.S.C. § 3663(b)(2)(C) (1988).

---

**3.** Haggard was sentenced under § 2J1.2(a), Obstruction of Justice, and § 2J1.3(a), Perjury. Neither section considered the defendant's extreme cruelty and gratuitously injurious behavior. While both § 2J1.2(b) and § 2J1.3(b) permit an eight-level increase if the offense involved causing physical injury to a person, the court did not apply these provisions when determining Haggard's sentence. range. The district court had legal authority to depart.

**4.** Section 2J1.2(b)(2) authorizes a three-level adjustment if "the offense resulted in a substantial

interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2). The accompanying commentary provides, in part:

Substantial interference with the administration of justice includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial government or court resources.

*Id.,* applic. note 1.

Haggard first argues that Michaela's mother should not be considered a victim for purposes of a restitution order under section 3663(b)(2)(C).[5] We reject his argument. Nothing in the statutory scheme restricts the availability of restitution to the victim specified in the offense of conviction. *Cf.* 18 U.S.C. § 3663(a)(2) (Supp.1993) ("For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means *any person* directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.") (emphasis added). In a case such as this, in which a defendant deliberately targets. an unsuspecting family as the victim of his crimes, the defendant may be held to answer for the family's loss of income.[6]

Haggard argues that even if Michaela's mother was a victim within the meaning of section 3663(b)(2)(C), restitution was improper because there was no showing that Michaela's mother suffered physical injury as a result of his crimes. He correctly notes that restitution under section 3663(b)(2)(C) is limited to cases in which "bodily injury" results from the defendant's offense. 18 U.S.C. § 3663(b)(2)(C).

The problem for Haggard is that he never objected during sentencing to the restitution order on this ground. In fact, Haggard waived his right to an evidentiary hearing on the restitution issue. Haggard stripped the court of its opportunity to develop the record as to the nature and extent of Michaela's mother's injuries.[7] Under these circumstances, Haggard's belated attack falls squarely within the general rule that we will not consider an issue raised for the first time on appeal. *United States v. Mondello,* 927 F.2d 1463, 1468 (9th Cir.1991).

**5.** Section 3663(b)(2)(C) allows restitution to "reimburse the victim for income lost by such victim as a result of such offense." *Id.*

**6.** Restitution in this case was limited to losses "caused by the specific conduct that is a basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990). The district court found that the covered losses were "a result of

## VI.

Haggard finally challenges the $4,000 fine the district court imposed. The Guidelines require the court to impose a fine in all cases, "except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). We review for clear error the district court's determination that a defendant is able to pay a fine. *United States v. Favorito,* 5 F.3d 1338, 1339 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1374, 128 L.Ed.2d 50 (1994). As is clear from the language of the Guidelines, the burden is on the defendant to show inability to pay. *Id.*

Haggard argues that the fine was inappropriate because he showed that he was destitute at the time of sentencing. Even accepting this as true, we note that Haggard made no showing of future inability to pay. In fact, as the district court found, Haggard can earn the money to pay a fine by working in the Inmate Financial Responsibility Program while incarcerated. A court may fine a presently indigent defendant if it finds that the defendant has sufficient earning capacity to pay the fine in the future. *Favorito,* 5 F.3d at 1339. The district court did not err in imposing the fine.

**AFFIRMED.**

the defendant's crimes" of lying to the FBI and the grand jury. This finding is not clearly erroneous.

**7.** We note, however, that the record showed that Michaela's mother represented that she suffered nausea, bronchitis, and a recurring eye infection as a result of Haggard's criminal conduct.