# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 21, 2011          Decided July 22, 2011

No. 09-3136

UNITED STATES OF AMERICA,
APPELLEE

v.

MANSOUR SALAHMAND,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00192)

*Gregory Stuart Smith*, appointed by the court, argued the cause and filed the briefs for appellant.

*Jay Apperson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, and *Virginia Cheatham*, Assistant U.S. Attorneys.

Before: HENDERSON, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Mansour Salahmand treated hundreds of patients while falsely representing that he was a licensed physician. As part of a plea agreement, Salahmand pled guilty to one count of identity theft, in violation of 18 U.S.C. § 1028(a)(7). In determining Salahmand's sentence, the district court increased his United States Sentencing Guidelines offense level, pursuant to Guideline § 3A1.1(b)(1), because some of his patients were children with serious mental health conditions.

Salahmand disputes the increase in his offense level, contending that § 3A1.1(b)(1)'s 2-level adjustment for vulnerable victims applies only to victims of the defendant's offense of conviction, who in this case would include only those victims who suffered financial loss. We disagree: the adjustment applies not only to victims of the offense of conviction, but also to victims of the defendant's relevant conduct. Accordingly, we affirm the judgment of the district court.

I

On June 27, 2008, a grand jury charged Salahmand with: (a) four counts of identity theft, in violation of 18 U.S.C. § 1028(a)(7); (b) three counts of using another person's DEA number to dispense a controlled substance, in violation of 21 U.S.C. § 843(a)(2); and (c) four counts of forgery of medical prescriptions, in violation of 22 D.C. CODE §§ 3241(b), 3242(c). On August 14, 2009, Salahmand pled guilty to Count Three of the indictment, which charged him with identity theft based on his 2006 use of the name and DEA number of a licensed

physician to distribute Schedule II controlled substances.[1] Count Three also incorporated language from Count One, which stated that Salahmand had been denied a medical license and DEA registration number and had provided false documents to the medical clinics that hired him. Pursuant to the plea agreement, the remaining counts were dismissed. As part of the agreement, Salahmand stipulated to the following "Statement of the Offense":

> The defendant, Mansour Salahmand, was not a licensed medical doctor. He did not hold a "DEA registration number," nor did he have a District of Columbia controlled substance license. Despite his lack of licensing and credentials, . . . Salahmand worked at . . . eight clinics in the District of Columbia and Maryland, purporting to treat patients (primarily children) as a psychiatrist. As a result, the defendant caused these eight clinics to fraudulently charge Medicaid, District of Columbia or other state health care programs, or private insurance companies for services which purportedly were done by a licensed medical doctor but were in fact performed by him. During the course of his scheme, . . . Salahmand wrote prescriptions for controlled substances for patients in the District of Columbia or Maryland; at least 164 of these prescriptions were filled at area pharmacies for controlled substances. On these 164 prescriptions, the defendant . . . forged the signatures [of] one of four doctors, Dr. D.H., Dr. M.P, Dr. T.M. or Dr. H.K. In

-----

[1]Drugs designated "Schedule II" are "the most regulated and controlled of the legal drugs." Statement of the Offense at 1 (Aug. 14, 2009) (Appellant's App. 43). They have an "accepted medical use," but also a "high potential for abuse" and "may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2).

> addition, . . . Salahmand used the DEA registration numbers of Doctors D.H., M.P., T.M., and H.K. . . . With respect to the Identity Theft count, from in or about September 2006 to October 2006, the defendant used the name and DEA number of Dr. T.M., without the doctor's permission, in order to distribute Schedule II controlled substances.

Statement of the Offense at 1-2 (Appellant's App. 43-44).

The United States Sentencing Guideline applicable to Salahmand's offense of identity theft is § 2B1.1. *See* United States Sentencing Commission, Guidelines Manual (USSG) App. A at 550 (Nov. 2010); *see also* USSG § 1B1.2. The revised Presentence Investigative Report (PSR) prepared by the U.S. Probation Office assigned Salahmand a base offense level of 6, pursuant to § 2B1.1(a)(2); a 6-level increase because the loss amount was between $30,000 and $70,000, pursuant to § 2B1.1(b)(1)(D); and a 4-level increase because the offense involved 50 or more (but fewer than 250) victims, pursuant to § 2B1.1(b)(2)(B). The PSR also added a 2-level adjustment because the defendant knew or should have known that a victim of the offense was a "vulnerable victim," pursuant to USSG § 3A1.1(b)(1). The PSR then decreased Salahmand's offense level by 2 levels for acceptance of responsibility, *see* USSG § 3E1.1(a), resulting in a total offense level of 16. That offense level, in combination with Salahmand's criminal history category of II, generated a Guidelines sentencing range of 24 to 30 months' imprisonment. USSG ch. 5, pt. A, Sentencing Table; *see* PSR ¶¶ 14-18, 23-24, 40, 76.

In support of the 4-level increase for "50 or more victims," the government presented evidence that more than 50 victims suffered financial loss, including "[m]ore than 68 patients" at a single clinic who "paid money themselves, either wholly or in

co-payments," for services "they believed to have been provided by a licensed medical doctor." Gov't Mem. in Aid of Sentencing at 7 (Record Material (R.M.) at 7). In support of the 2-level adjustment for "vulnerable victims," the government presented evidence of additional patients treated by Salahmand at the seven other clinics who "were exclusively or mostly children whose treatment was paid by Medicaid or other need-based public health care systems." *Id*. at 7 n.8 (R.M. 7). These victims, the government argued, were "vulnerable due to age and mental condition brought on by abuse, neglect, and crime." *Id*. at 8 (R.M. 8).

The government identified five specific vulnerable patients whom Salahmand treated, including: a 12-year-old boy in foster care who was born addicted to cocaine and diagnosed with Attention Deficit Hyperactivity Disorder and Depressive Disorder; a 12-year-old girl, suffering "from depression and crying spells," who had been abandoned by her mother and "sexually abused by her drug-addicted father"; a 7-year-old girl with Adjustment Disorder who showed signs of psychiatric disturbance due to abuse by her father; a 15-year-old boy who had been sexually abused by his father's girlfriend; and a 10-year-old girl, diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood, who had witnessed the homicide of her cousin and shooting of her father, and who had been assaulted by her brother. *Id.* at 8-9 (R.M. 8-9). The government proffered that these five patients were only "examples" of "the other 200 similarly situated [patient] victims" treated by Salahmand who "lacked the maturity (many of the patients were children), the ability (due to depression or mental illness), or the resources (lack of education, [or] employment) to have the fortitude to stand up to a [purported] 'medical doctor' to challenge his diagnoses and prescriptions." *Id.* at 8, 10 (R.M. 8, 10).

Salahmand did not dispute any of these facts. *See* Def.'s Sentencing Mem. at 10 (R.M. 32). Although he initially objected to the 4-level increase for "50 or more victims" under USSG § 2B1.1(b)(2)(B), he later conceded that the doctors whose identities he stole, and the 68 nonreimbursed patients whom he treated at one clinic, were "victims" as defined by that guideline. *See* Sentencing Hr'g Tr. at 10-11 (Dec. 10, 2009) (Appellant's App. 51-52). Salahmand did claim, however, that none of those patients were vulnerable, and that the other patients who were vulnerable could not be considered "victims" for purposes of the 2-level adjustment under USSG § 3A1.1(b)(1) because they did not suffer financial loss. Def.'s Sentencing Mem. at 10 (R.M. 32).

The district court determined that Salahmand's Sentencing Guidelines calculation should reflect not only his offense of conviction -- identity theft -- but also his relevant conduct in "treating patients" and "prescribing both non-controlled and controlled medications" for them while falsely posing as a psychiatrist. Sentencing Hr'g Tr. at 66 (R.M. 50). The court specifically found that Salahmand was not licensed to practice medicine; had failed required medical licensing examinations fifteen times; did not have a District of Columbia, Maryland, or DEA registration number to prescribe controlled substances; provided services as a psychiatrist to patients in eight clinics from 2004 to 2006; treated primarily patients under the age of eighteen; and wrote at least 164 prescriptions for controlled substances, without being registered, by forging the signatures and using the DEA registration numbers of licenced doctors. *See id.* at 63-65 (R.M. 47-49).

Over Salahmand's objection, the court then applied the 2-level adjustment for vulnerable victims, pursuant to USSG § 3A.1.1(b)(1). The court determined that a person did not have to suffer a financial loss to qualify as a "vulnerable victim"

under that guideline.  It found that "at least [the] five" specific patients identified by the government -- whose ages ranged from seven to fifteen; who were in foster care, were from abusive households, or had parents unable to care for them; and who had "mental health conditions" -- were "vulnerable victims." Sentencing Hr'g Tr. at 11-14 (Appellant's App. 52-55).  The court further found that Salahmand treated those five patients "as their psychiatrist" and "prescrib[ed] medications that were in some instances controlled substances," and that he "would certainly know" of their vulnerability and their inability to detect that he "wasn't a licensed psychiatrist [or] a medical doctor, and . . . shouldn't have been practicing psychiatry." *Id.* at 11-13, 16-18 (Appellant's App. 52-54, 57-59).

The district court concluded that the PSR had properly calculated the (advisory) Guidelines sentencing range at 24-30 months.  Although the court stated that it "would have" sentenced Salahmand to 28 months, it imposed a sentence of only 13 months' incarceration to give him credit for jail time he had served for a malicious-wounding conviction in Virginia and to recognize that his guilty plea meant that "those patients [] did not have to come and testify."  *Id*. at 59, 74 (Appellant's App. 65, 71).

II

In reviewing a sentencing challenge, this court must first determine whether the district court calculated the correct Guidelines sentencing range.  *See United States v. Blalock*, 571 F.3d 1282, 1285 (D.C. Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  In making that determination, "[p]urely legal questions are reviewed *de novo*; factual findings are to be affirmed unless clearly erroneous; and we are to give due deference to the district court's application of the guidelines

to facts." *United States v. Henry*, 557 F.3d 642, 645 (D.C. Cir. 2009) (internal quotation marks omitted).

Salahmand's sole challenge on appeal is to the 2-point "vulnerable victim" sentencing adjustment that the court imposed pursuant to Guideline § 3A1.1(b)(1). The guideline provides that, "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by 2 levels." USSG § 3A1.1(b)(1). Salahmand does not dispute the district court's findings that his minor patients were vulnerable, but he insists that a person cannot be a "vulnerable victim" for purposes of § 3A1.1(b)(1) unless he or she is also a "victim" as defined by the guideline that governs his or her offense of conviction. In this case, that guideline is § 2B1.1, and Salahmand rightly states that his vulnerable patients were not "victims" as that guideline defines the term because they did not suffer financial loss. The question at issue is whether he is also right that the definition of "victim" in § 2B1.1 governs adjustments under § 3A1.1(b)(1). As Salahmand notes, this presents "a pure question of law," Appellant's Reply Br. 3, which we consider de novo.

A

We begin with Guideline § 2B1.1, which applies to a broad range of economic offenses including the identity theft offense for which Salahmand was convicted. *See* USSG App. A at 550. That guideline fixes a base offense level of 6, which is increased by specified levels for certain "specific offense characteristics." Pursuant to § 2B1.1, the court imposed a 6-level increase because the amount of the loss caused by Salahmand's offense was more than $30,000, *see* USSG § 2B1.1(b)(1), and another 4-level increase because the offense "involved 50 or more victims," *id*. § 2B1.1(b)(2)(B).

Application Note 1 to § 2B1.1 provides the following definition of "victim":

> For purposes of this guideline[,] . . . "[v]ictim" means (A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense.

*Id*. § 2B1.1, comment., n.1. Application Note 3 to § 2B1.1 further provides that "[a]ctual loss means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. § 2B1.1, comment., n.3.[2] The district court found the 4-level increase applicable because at least 68 individual patients who made co-payments for their medical treatment suffered actual financial loss, i.e., "actual loss [as] determined under subsection (b)(1)," *id*. § 2B1.1, comment., n.1, as a result of Salahmand's identity theft. He does not challenge that finding.

The district court then went on to consider whether to impose an additional 2-level increase under Guideline § 3A1.1(b)(1), which, as we have noted, applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." *Id.* § 3A1.1(b)(1). The district court did not find that any of the patients it considered vulnerable -- specifically, the five children identified by the government -- suffered either financial loss or bodily injury. Nonetheless, it imposed the additional 2-level increase because it found that those vulnerable patients were injured by being

---

[2]Application Note 4 to § 2B1.1 states that, in cases (like this one) "involving means of identification," "'victim' means (i) any victim as defined in Application Note 1; or (ii) any individual whose means of identification was used unlawfully or without authority." USSG § 2B1.1, comment., n.4.

treated by an unlicensed practitioner.  Salahmand disputes this conclusion, not on the ground that the patients were uninjured, but on the ground that such injury does not make them "victims" as the word is defined in Application Note 1 to § 2B1.1.

But § 2B1.1's definition of "victims" does not govern increases under § 3A1.1.  The introduction to the definition provision of § 2B1.1's Application Note 1 makes clear that its definition of "victim" is "[f]or purposes of *this* guideline." USSG § 2B1.1, comment., n.1 (emphasis added).  The 2-level increase at issue here did not result from application of Guideline § 2B1.1, the guideline for Salahmand's offense of conviction, which is contained in the "Offense Conduct" chapter of the Guidelines Manual (Chapter Two).  Rather, it resulted from application of Guideline § 3A1.1, which is contained in the "Adjustments" chapter (Chapter Three) and applies to all offenses.

The Guidelines Manual instructs courts first to determine "from Chapter Two" the guideline "applicable to the offense of conviction," USSG § 1B1.1(a)(1), and then to determine "the base offense level and apply any appropriate specific offense characteristics" contained in that guideline, *id.* § 1B1.1(a)(2). The district court did that by applying the 4-level increase under § 2B1.1(b)(2)(B).  The Manual then instructs the court to "[a]pply the adjustments as appropriate related to victim[s] . . . from Part[] A . . . of Chapter Three."  *Id.* § 1B1.1(a)(3).  The court did that by applying the "vulnerable victim" adjustment of § 3A1.1(b)(1).

Just as Application Note 1 to § 2B1.1 contains a definition of "victim" for purposes of that guideline, the first sentence of Application Note 2 to § 3A1.1 provides a definition of "vulnerable victim" "[f]or purposes of subsection (b)" of § 3A1.1:

*For purposes of subsection (b)*, "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.

*Id*. § 3A1.1, comment., n.2 (emphasis added). Subsection (b) -- which imposes a 2-level increase if the defendant knew or should have known that a victim of the offense was a vulnerable victim -- is the subsection at issue here. *See id*. § 3A1.1(b)(1). As we have noted, Salahmand does not dispute the district court's findings that his minor patients with mental health conditions were "unusually vulnerable and particularly susceptible to criminal conduct," and that he "knew or should have known of the victim[s'] unusual vulnerability." Appellant's Br. 12-13 (internal quotation marks omitted); *see* Appellant's Reply Br. 3; Sentencing Hr'g Tr. at 12 (App. 53). But he argues, again, that they were not vulnerable "victims" because they were not "victims" of the offense of conviction as § 2B1.1 defines the term.

The problem with this argument is that it does not give weight to all of the language of the first sentence of Application Note 2 to § 3A1.1, which we set out again:

For purposes of subsection (b), "vulnerable victim" means a person . . . who is a victim of the offense of conviction *and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)*.

USSG § 3A1.1, comment., n.2 (emphasis added). In short, the 2-level adjustment of § 3A1.1(b)(1) applies not only to victims of the offense of conviction, but also to victims of any relevant

conduct for which the Guidelines make the defendant accountable. As to the meaning of "relevant conduct," the text of the Application Note refers us to the "Relevant Conduct" section of the Guidelines Manual. That section states, inter alia, that "adjustments in Chapter Three, shall be determined on the basis of . . . all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." *Id.* § 1B1.3(a)(1). Salahmand does not deny that he treated his vulnerable patients "during the commission" of his identity theft offense, when he posed as a licensed physician and used the names and DEA numbers of licensed physicians. Accordingly, because those patients were victims of that conduct, it was appropriate for the district court to apply the 2-level adjustment of § 3A1.1(b)(1).

Salahmand maintains that the language of the first sentence of Application Note 2 does not render § 3A1.1(b)(1) applicable to victims of relevant conduct, but rather requires that courts "link the 'vulnerable victim' enhancement to the underlying predicate offense." Appellant's Br. 19. It is not clear what Salahmand means by "link," but he appears to mean that the "and" in that sentence requires vulnerable victims to be victims of *both* the offense of conviction *and* the relevant conduct. That interpretation, however, directly contradicts the Sentencing Commission's own explanation of why that sentence was added to the Application Note.

The Commission added the cited sentence to § 3A1.1's Application Note 2 in 1997. *See* USSG App. C, Amdt. 564 (effective Nov. 1, 1997). In its explanation of the "Reason for Amendment," the Commission stated that it added the sentence to make clear that "victim of the offense" in § 3A1.1(b) refers not "only to a victim of the defendant's offense of conviction," but "more broadly, to a victim of any relevant conduct." *Id.* Indeed, at the same time, the Commission also inserted "of

conviction" after "the offense" in subsection (a) of Guideline § 3A1.1, which provides a 3-level adjustment for victims of hate crimes. It did so to "clarif[y] that the enhancement in subsection (a) is limited to victims of the defendant's offense of conviction" -- by contrast to the enhancement in subsection (b), which extends to victims of relevant conduct as well. *Id.*; *see also United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) (declining to read Application Note 2 to require that "a 'vulnerable victim' must be harmed by both the offense of conviction and by relevant conduct outside that offense" because the "Commission could not have intended to define 'victim' for sentencing purposes more narrowly than for the offense of conviction itself").

B

Our conclusion -- that the 2-level adjustment of § 3A1.1(b)(1) applies not only to victims of the offense of conviction, but also to victims of the defendant's relevant conduct -- is consistent with, if not compelled by, our previous decision in *United States v. Smith*, 374 F.3d 1240 (D.C. Cir. 2004). Smith, a branch chief for the District of Columbia's Mental Retardation and Developmentally Disabled Administration (MRDDA), was convicted of conflict of interest, in violation of 18 U.S.C. § 208(a), for referring patients to treatment centers with which he had financial transactions. 374 F.3d at 1242-43. The district court gave Smith a 2-level "vulnerable victim" adjustment because he "used his power over mentally retarded adults to realize personal financial gains to their detriment." *Id.* at 1248. We concluded that the court did not clearly err in finding that Smith's MRDDA clients were harmed by the centers' substandard treatment. And citing Application Note 2 to § 3A1.1, we "further agree[d] with the district court that these harmful referrals [were] 'relevant conduct' for . . . Smith's conflict of interest offense" and thus

that "the requirements for an enhancement under Section 3A1.1 of the Guidelines [were] satisfied." *Id.*

Smith did not make precisely the same argument that Salahmand does here, but he did make a closely related one. Noting that his offense took place in 1994-95 -- before the 1997 amendment to Application Note 2 -- he emphasized that the 1995 Guidelines "mention[ed] only the offense, thus suggesting that relevant conduct [was] not a basis for the Section 3A1.1 enhancement under that version of the Guidelines." *Id.* at 1249 n.2. In response, we said that there was no discrepancy between the 1995 and 2002 versions because "[t]he word 'offense' in the 1995 Guidelines -- indeed, in every version of the Guidelines -- is a term of art defined to include relevant conduct." *Id.* (citing 1995 USSG § 1B1.1, comment., n. 1(*l*)). The 1997 amendment to Application Note 2, we found, was added merely "to spell out what eight circuits had held the Guidelines already provided -- that the word 'offense' in [§ 3A1.1] included relevant conduct." *Id.*[3]

---

[3]Salahmand insists that "the district court misread *Smith*" in determining "that 'vulnerable victims' [under § 3A1.1] did not also need to be 'victims' under U.S.S.G. § 2B1.1." Appellant's Br. 13-15. But it is Salahmand who misreads the case. Salahmand cites a footnote in *Smith*, in which we said that the district court "gave due consideration to the applicability of the [§§ 3A1.1 and 3B1.1] enhancements to the changed predicate offense." *Smith*, 374 F.3d at 1248 n.1. From that footnote, Salahmand infers a holding that the vulnerable victim enhancement of § 3A1 applies only with respect to victims of the offense of conviction. But that was not the point of the *Smith* footnote. Smith had been convicted of conspiracy as well as conflict of interest, and (after a remand) the district court changed its mind about what the object of that conspiracy had been. The point of the footnote was that the change made no difference to the applicability of the adjustments, because the district court concluded that although "the object offense of the conspiracy ha[d] changed, the

Our interpretation of § 3A1.1 is also fully in accord with the decisions of our sister circuits, which we set forth in parenthetical detail to make that consistency plain. *See United States v. Kennedy*, 554 F.3d 415, 423-24 (3d Cir. 2009) (holding that, although the "elderly account holders from whom [the defendant] stole did not satisfy the definition of 'victim' under USSG § 2B1.1(b)(2)" because they were reimbursed and suffered no financial loss, "this does not mean that they are not 'vulnerable victims' under USSG § 3A1.1(b)(1)" because "[t]he Guidelines make clear that 'victims' under § 2B1.1 and § 3A1.1(b) are separate definitions"); *United States v. Moon*, 513 F.3d 527, 541 (6th Cir. 2008) (reaffirming that "the vulnerable victims enhancement [is] properly applied based on 'relevant conduct' . . . , notwithstanding the fact that a . . . governmental entity is the primary victim of the offense of conviction"; and holding that patients who received partial doses of medication "during the course of Defendant's scheme to defraud . . . healthcare benefit programs" qualified as vulnerable victims under § 3A1.1(b)(1)); *United States v. Zats*, 298 F.3d 182, 187 (3d Cir. 2002) (concluding that "the drafters [of Application Note 2 to § 3A1.1] obviously intended to define 'victim' to mean anyone hurt by conduct for which the defendant is accountable under § 1B1.3," and that "[t]herefore, victim status is not limited to those hurt by the offense of conviction, but also includes those hurt by relevant conduct outside that offense"); *see id.* at 186 (noting that the Third Circuit had previously "applied the enhancement where the defendant sexually assaulted a twelve-year-old [passenger] in the process of stealing a car and later pled guilty only to carjacking"); *United States v. Haggard*, 41 F.3d 1320, 1325-26 (9th Cir. 1994) (holding "that courts properly may look beyond the four corners of the charge to the defendant's underlying

facts supporting the . . . adjustments ha[d] not." *Id.* at 1248 n.1 (internal quotation marks omitted).

conduct in determining whether someone is a 'vulnerable victim' under section 3A1.1," and that family members who heard the defendant's (false) story that he knew the whereabouts of their missing relative could "be considered victims of [the defendant's] crimes of obstructing justice and making false statements to the FBI"); *United States v. Yount*, 960 F.2d 955, 956-58 (11th Cir. 1992) (holding that "the 'vulnerable victim' provision does not require a vulnerable victim who is a victim of the offense of conviction," and that elderly persons whose bank accounts the defendant raided qualified, notwithstanding that the victim of the offense of conviction was the bank and that "none of the [account holders] actually lost money").[4]

Salahmand protests that, although the Third Circuit's opinion in *United States v. Kennedy* reached the same conclusion we reach, it "acknowledge[d] th[e] apparent *non sequitur*" that "one can be a *vulnerable victim* without being a victim at all." 554 F.3d at 423. With respect, we do not see the non sequitur. The problem that Salahmand has pointed out is not that his minor patients were not victims, but that they were not victims as defined by § 2B1.1. They are, however, victims as defined by § 3A1.1, and there is nothing illogical about the Sentencing Commission providing different definitions for different guidelines.

Salahmand also protests any reliance on precedents like *United States v. Haggard*, 41 F.3d at 1325-26, and *United States v. Yount*, 960 F.2d at 958, which interpreted older versions of

---

[4]*See also United States v. Gill*, 99 F.3d 484, 488 (1st Cir. 1996); *United States v. Blake*, 81 F.3d 498 (4th Cir. 1996); *United States v. Echevarria*, 33 F.3d 175 (2d Cir. 1994); *United States v. Stewart*, 33 F.3d 764, 770 (7th Cir. 1994); *United States v. Lee*, 973 F.2d 832, 833-34 (10th Cir. 1992); *United States v. Bachynksy*, 949 F.2d 722 (5th Cir. 1991).

USSG § 3A1.1(b).  *See* Appellant's Reply Br. 10-11.  In fact, those precedents are extraordinarily reliable, as the Sentencing Commission's explanation of the reason for its 1997 amendment to Application Note 2 makes manifest:

> This amendment addresses a circuit court conflict regarding whether "victim of the offense" in § 3A1.1 . . . refers only to a victim of the defendant's offense of conviction or, more broadly, to a victim of any relevant conduct.  The amendment adopts the majority appellate view, which holds that a sentencing court should consider the defendant's relevant conduct when determining whether the vulnerable victim enhancement applies.  *See, e.g.*, *United States v. Haggard*, 41 F.3d 1320, 1326 (9th Cir. 1994) (proper to consider harm caused to victims beyond the defendant's offense of conviction); *United States v. Yount*, 960 F.2d 955 (11th Cir. 1992).

USSG App. C, Amdt. 564.

Finally, Salahmand cites two cases in which courts declined to impose a 2-level increase under § 3A1.1, and contends that those decisions establish that a vulnerable victim adjustment under that guideline is unwarranted unless the victim suffers either financial loss or bodily injury.  *See United States v. Geiger*, 190 F.3d 661 (5th Cir. 1999); *United States v. Anderson*, 85 F. Supp. 2d 1084 (D. Kan. 1999).  But those cases did not deny adjustments under § 3A1.1 because the asserted victims did not suffer financial loss or bodily injury, but rather because they suffered no injury at all.  In short, they did not qualify as "victims" under any definition.  *See Geiger*, 190 F.3d at 664 (finding a § 3A1.1 adjustment unwarranted because, in "contrast to other medical fraud cases within this Circuit in which patients suffered harm or at least potential harm from [a] fraudulent

scheme, the patients here suffered no harm[;] [i]nstead, the patients benefitted from the scheme"); *Anderson*, 85 F. Supp. 2d at 1093 (denying the adjustment because the government "failed to show that the patients were harmed in any way" from the defendant's Medicare kickback scheme).

## III

For the foregoing reasons, we conclude that Guideline § 3A1.1(b)(1)'s 2-level adjustment for vulnerable victims applies not only to victims of the offense of conviction, but also to victims of the defendant's relevant conduct. Accordingly, the judgment of the district court is

*Affirmed.*